[Crim. No. 21673. July 16, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE CALLOWAY, Defendant and Appellant.

In re WILLIE CALLOWAY on Habeas Corpus.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Therene Powell, Deputy State Public Defender, for Defendant and Appellant and Petitioner.

Wilbur F. Littlefield, Public Defender (Los Angeles), Dennis A. Fischer and Melissa Hill, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Appellant and Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Richard D. Marino, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THE COURT.\***—Defendant appeals from a judgment sentencing him to state prison after his probation was revoked upon his admission of a violation of probation conditions. He also seeks relief from this judgment by writ of habeas corpus. In both actions relief is sought on the ground that defendant's prison sentence contravened a plea bargain expressly precluding such a disposition. The People concede that the plea bargain was so violated and that the judgment must therefore be reversed. Accordingly, the only matter in dispute is the nature of the relief to which defendant is entitled. ■ Defendant contends he is entitled to specific performance of the plea bargain. We reject this contention. As we recently reiterated, a defendant is not entitled to specific performance of a plea bargain "absent very special circumstances." (*People* v. *Kaanehe* (1977) 19 Cal.3d 1, 13 [136 Cal.Rptr. 409, 559 P.2d 1028].) There being no such circumstances here, the judgment must be reversed with directions to restore the status quo ante by permitting defendant to withdraw his admission of probation violation and to enter a new plea to that charge.

Defendant also contends he should be resentenced by a judge other than the one who approved the bargain and imposed the present sentence. We do not reach this contention, as Judge Robert H. London, who sentenced defendant, has retired from the bench. Accordingly, the matter is moot.

---

*Before Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., Newman, J., Stephens, J.,† and Woods, J.†

†Assigned by the Chairperson of the Judicial Council.

We first examine the factual circumstances underlying this case. On November 2, 1976, defendant pleaded guilty to endangering the life or health of a child. (Pen. Code, § 273a, subd. (1); all further statutory references are to this code.) Proceedings were suspended and defendant was granted probation.

On February 21, 1978, a desertion hearing was held and probation was revoked. Defendant failed to appear at this hearing and a bench warrant was issued.

On September 15, 1978, defendant was arraigned in municipal court on a misdemeanor battery charge. (§§ 242, 243.)

On September 26, 1978, the bench warrant was recalled and probation was reinstated. A supplemental probation report was ordered.

On December 21, 1978, the supplemental probation report was filed and probation was revoked. Defendant again failed to appear at this hearing and a bench warrant was again issued.

On February 21, 1979, defendant pleaded nolo contendere to the battery charge, proceedings were suspended and he was granted probation.

On March 14, 1979, the bench warrant was recalled. Supplemental probation reports were ordered on that date and on April 26, 1979, and June 6, 1979. The supplemental probation reports of September 26, 1978, March 14, 1979, April 26, 1979, and June 6, 1979, all recommended that probation remain revoked and that sentence be pronounced because of defendant's drug and alcohol abuse, serious psychiatric problems, continued assaultive behavior, lack of cooperation with probation officer, repeated failures to report to probation officer and desertion from probation.

On August 9, 1979, pursuant to a plea bargain approved by Judge London, defendant admitted violating the terms of his probation, based on the battery conviction, in return for the following agreement by Judge London: No finding would be made as to other allegations of probation violation, namely, failure to obey instructions of probation officer, failure to report to probation officer and desertion from probation. Pursuant to section 1203.03, defendant would be committed to the Department of Corrections for a period not to exceed 90 days for

preparation of a diagnostic study. Defendant would not be sentenced to prison.

On September 24, 1979, the section 1203.03 report was filed, setting forth the diagnostic staff's unanimous opinion that a prison sentence was the most appropriate disposition.

On November 21, 1979, Judge London, having read and considered the section 1203.03 report, as well as the supplemental probation reports, ordered defendant's probation to remain revoked and sentenced him to state prison for the term prescribed by law, with the observation that under the determinate sentencing law, defendant would have been sentenced to the middle term of two years. The judge also awarded defendant credit for 281 days actually served in custody and 93 days conduct credit. The parties failed to remind Judge London that the prison sentence was contrary to the plea bargain; neither the deputy district attorney nor the deputy public defender attending the sentencing proceedings had appeared at the time the original bargain was struck.

On November 28, 1979, defendant wrote a letter to Judge London asking for a new sentence hearing and calling his attention for the first time to the plea bargain. The letter was treated as an ex parte request for rehearing and denied.

On May 27, 1980, defendant was released on bail pending appeal.

We next review relevant case authority. In *People v. Johnson* (1974) 10 Cal.3d 868 [112 Cal.Rptr. 556, 519 P.2d 604], the defendant, pursuant to a court-approved bargain, pleaded guilty to credit card forgery (§ 484f, subd. (2)) in return for a misdemeanor sentence, suspension of sentence, and a grant of probation. However, upon discovering that defendant had concealed his true name and past criminal record, the court sentenced him to state prison, contrary to the bargain. Because the court failed to advise defendant of his right under section 1192.5 to withdraw his plea, we reversed the judgment. Stressing our "reluctance to create a right to specific performance of a plea bargain" in such a case, we held it sufficient to require the court to provide defendant with an opportunity to withdraw his plea. (10 Cal.3d at p. 873.)

In *People v. Kaanehe, supra*, 19 Cal.3d 1, it was the People who sought specific performance. Having obtained defendant's guilty plea to grand theft (§ 487) and petty theft with a felony prior (§ 484, former

§ 667) in return for an agreement from the People to refrain from taking a position on sentencing, the prosecutor violated that agreement by arguing in favor of a state prison sentence by letter and during a conference in chambers. Upon being sentenced to prison, defendant appealed, contending, inter alia, that the trial court erred in refusing to permit him to withdraw his guilty plea after the prosecutor breached the plea bargain agreement. The People responded that the plea bargain should be specifically enforced by rearraigning defendant, striking the prosecutor's letter from the record, and ordering the People to comply with the agreement.

Finding specific enforcement to be an inappropriate remedy under the circumstances, we noted that in *Johnson* we held that "a defendant should not be entitled to enforce an agreement between himself and the prosecutor calling for a particular disposition against the trial court absent very special circumstances. The preferred remedy in that context is to permit a defendant to withdraw his plea and to restore the proceedings to the original status quo." (19 Cal.3d at pp. 13-14.) We explained the rationale of *Johnson*: "Specific enforcement of a particular agreed upon disposition must be strictly limited because it is not intended that a defendant and prosecutor be able to bind a trial court which is required to weigh the presentence report and exercise its customary sentencing discretion." (*Id.*, at p. 14.)

Because the remedy sought by the People in *Kaanehe* would not have bound the trial judge and thus did not raise the same concerns, *Johnson* was not controlling in that case. Nevertheless, other factors—the apparently wilful and deliberate nature of the breach and the substantial possibility that specific performance would not completely repair the harm caused by the breach—led us to conclude that the defendant in *Kaanehe* should be permitted an opportunity to withdraw his guilty plea.

*Johnson* does control in the present case, because ordering specific performance would prevent the trial court from exercising its sentencing discretion, forcing the court to impose a sentence it expressly rejected as inappropriate. Defendant and amicus Los Angeles County Public Defender's office nevertheless seek to distinguish *Johnson* on a number of grounds.

Amicus' argument proceeds as follows: *Johnson* was predicated upon section 1192.5, a statute which sets forth the procedure to be followed

in accepting or rejecting a plea bargain specifying punishment or exercise of sentencing power. That section is, by its terms, applicable when a defendant enters a plea of "guilty or nolo contendere to an accusatory pleading charging a felony." The section is thus not applicable, amicus asserts, to admission of a probation violation. Therefore, amicus concludes, *Johnson* does not control this case. We disagree.

Whether or not section 1192.5 is applicable to plea bargains involving admission of probation violations, the principles underlying both that section and *Johnson* itself apply here. We conceive of no reason why it would be more appropriate for an appellate court to interfere with a trial court's exercise of its sentencing discretion in a case involving admission of probation violation than it would be in one involving a guilty plea to a felony. Amicus does not suggest such a reason.

Defendant points out that in *Kaanehe* we did not address ourselves to a situation in which "the trial court itself limited its discretionary power, and then changed its mind," as happened here. Yet, if *Kaanehe* may be distinguished on this ground, *Johnson* cannot be, for in *Johnson* the trial court approved the bargain specifying punishment, and then, upon learning the defendant's true name and criminal record, imposed a more severe sentence than had been agreed upon.

Finally, recalling our statement in *Kaanehe* that a defendant is not entitled to specific performance of a plea bargain "absent very special circumstances," defendant contends this case presents such circumstances.

Defendant asserts in favor of specific performance that he has spent approximately six months in state prison in violation of the plea bargain. However, this circumstance does not serve to distinguish *Johnson*, for in that case the defendant, who was promised he would be granted probation, apparently spent far more time in prison than defendant served in this case. In light of defendant's inadequate performance on probation, fairness demands no more than that he be permitted an opportunity to withdraw his admission of probation violation and to plead anew to that charge. The dissent stresses the fact that in the present case the trial court has violated its own "personal commitment" to defendant not to send him to prison. (*Post*, p. 674.) The record shows that the bargain was first negotiated between the People and defendant and was presented to the trial court for its approval. The trial court's "personal commitment" merely constituted approval of the negotiated

bargain. As we stated in *Johnson*, "the court, upon sentencing, has broad discretion to withdraw its prior approval of a negotiated plea." (P. 873.) That is precisely what occurred in the present case.

The authorities relied on by the dissent are inapposite. *People* v. *Flores* (1971) 6 Cal.3d 305, 309 [98 Cal.Rptr. 822, 491 P.2d 406], preceded our *Johnson* and *Kaanehe* decisions wherein we expressed our reluctance to order specific performance of repudiated plea bargains. *Flores* assumed without analysis that specific performance (by striking a sentence enhancement not previously explained to the defendant) was the only appropriate remedy in that case.

Nor is *Santobello* v. *New York* (1971) 404 U.S. 257, 262 [30 L.Ed.2d 427, 433, 92 S.Ct. 495], and its progeny (e.g., *Correale* v. *United States* (1st Cir. 1973) 479 F.2d 944, 949) controlling. Although the court in *Santobello* acknowledged that specific performance was an alternative remedy to withdrawal of the plea, the court further explained that "The ultimate relief to which petitioner is entitled we leave to the discretion of the state court ...." (P. 263 [30 L.Ed.2d at p. 433].) Thus, due process principles do not invariably demand that specific performance be ordered; the state courts retain wide discretion to fashion an appropriate remedy.

In the present case, although defendant has served some prison time in violation of the original bargain, he will receive an appropriate credit for that time in the event he ultimately is sentenced to a term of incarceration following his withdrawal of his guilty plea. We believe that this alternative is a more appropriate one in light of the unanimous recommendation of the diagnostic staff favoring imposition of a prison sentence based upon defendant's violation of probation, and the trial court's ultimate acceptance of that recommendation as a proper one in this case.

The judgment is reversed with directions to permit defendant to withdraw his admission of probation violation and to enter a new plea to that charge. For any sentence imposed involving a period of incarceration defendant is entitled to appropriate credit for time served. The writ of habeas corpus is denied as unnecessary in light of reversal of the judgment.

**BIRD, C. J.,** Dissenting.—In this case, appellant was induced to admit that he had violated the conditions of his probation only after the judge

made an express personal commitment not to send him to prison. In addition to admitting the violation and giving up his procedural rights to contest whether the violation occurred (see *People* v. *Vickers* (1972) 8 Cal.3d 451, 455 [105 Cal.Rptr. 305, 503 P.2d 1313]), appellant was also required by the terms of the bargain to submit to a 90-day period of diagnostic confinement at a state prison facility before the final sentencing decision was made. Appellant in all respects complied with his end of the bargain, admitting the probation violation, giving up his procedural rights and undergoing the period of diagnostic imprisonment.

When he returned, the judge who made the personal commitment not to send appellant to prison did just that, and refused to rectify the mistake when appellant brought it to his attention by letter after the sentencing hearing. Appellant thereafter spent six months in state prison before being released on bail pending appeal.

The question, of course, is not whether this judgment can be allowed to stand. The Attorney General concedes that the judgment must be reversed. The dispute is over how this court will remedy the broken promise of the trial court. The majority claims its result will "restore the status quo ante by permitting defendant to withdraw his admission of probation violation ...." (Maj. opn., *ante*, at p. 668.) In reaching this conclusion, the majority fails: (1) to consider whether due process principles require the enforcement of the trial judge's commitment in the circumstances of this case; or (2) to acknowledge the existence of federal case law that supports appellant's request in these circumstances.

Instead, the court reaches its inequitable result by relying upon cases with clear factual distinctions and by conveniently dismissing one of this court's prior cases which granted enforcement of a plea bargained sentence limitation. (*People* v. *Flores* (1971) 6 Cal.3d 305, 309 [98 Cal.Rptr. 822, 491 P.2d 406].) How can this court so blithely ignore appellant's detrimental reliance upon the plea bargain and his performance of his obligations under that bargain?

## I.

Since the basis of appellant's claim to enforcement stems from the trial judge's remarks at the time of appellant's admission to a probation violation, it is vital to examine the court's remarks verbatim:

"THE COURT: Do you understand that if you admit that you are in violation of probation, if you give up those constitutional rights which I described to you, that the court will at this time sentence you to a diagnostic study which will be somewhere between 45 and 90 days in the state prison system at Chino? Do you understand that, sir?

"THE DEFENDANT: Yes, sir.

"THE COURT: And I will receive a report from the California Department of Corrections at the end of their diagnosis. You will be brought back to this court at which time a decision will be made as to whether or not to reinstate you on probation or make some other disposition.

"*My agreement on the record between the district attorney and your attorney is that I will not sentence you to the state prison when you return.* I will either sentence you to the county jail, put you back on probation, perhaps terminate the probation completely on this case, allow you to have probation on your municipal court case to Judge Jakes, change the conditions of probation. *I am really not telling you what I am going to do, but I am making a commitment that you will not be sentenced to state prison.* Do you understand that, sir?

"THE DEFENDANT: Yes.

"THE COURT: Do you understand you will be in custody up to 90 days and perhaps even some period of time after that when you return?

"THE DEFENDANT: (Nods head.)" (Italics added.)

The transcript of the hearing illustrates several important aspects of this plea bargain. First, the trial judge did *not* reserve any right to renege on the agreement if he later changed his mind. The trial judge made an unconditional commitment that upon return from the state prison diagnostic study, appellant would not be sentenced to state prison. All other dispositional alternatives were left open, but state prison was ruled out. Second, this was no ordinary plea bargain, i.e., a simple agreement to limit punishment in exchange for the defendant's admission of guilt and surrender of his rights. There is the additional factor that appellant agreed to surrender his liberty and be incarcerated in a state facility for a substantial period of time before he was finally sentenced. This was a change in status since appellant had been released on his own recognizance on June 28, 1979.

Still another relevant fact requires mention. At the August 9, 1979, hearing, the trial court had before it several probation reports. These detailed appellant's generally unsuccessful performance on probation and recommended that appellant's probation remain revoked and sentence be imposed. No new factual information regarding appellant's probation performance was communicated to the trial court between August 9, 1979, and the imposition of a state prison sentence on November 21, 1979. Nor was there any indication that appellant had ever made any misrepresentations to the court at the time of the plea bargain. (Cf. *People* v. *Johnson* (1974) 10 Cal.3d 868 [112 Cal.Rptr. 556, 519 P.2d 604].)

## II.

The United States Supreme Court stated with respect to plea bargaining agreements that "[t]his phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary . . . ." (*Santobello* v. *New York* (1971) 404 U.S. 257, 262 [30 L.Ed.2d 427, 433, 92 S.Ct. 495].) In reversing a state court conviction in *Santobello*, the high court was necessarily resting its decision on federal constitutional grounds involving a due process violation, since the high court has no general supervisory power over state courts. (See *id.*, at pp. 266-267 [30 L.Ed. at pp. 435-436] (conc. opn. of Douglas, J.); Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains* (1978) 66 Cal.L.Rev. 471, 474-475, fn. 10, 476, fn. 16 [hereinafter cited as *Broken Plea Bargains*].)

Due process considerations also govern the remedy which is to be afforded a defendant when a plea bargain is breached. (*Santobello* v. *New York, supra*, 404 U.S. at p. 262 (maj. opn.) [30 L.Ed.2d at pp. 433, 436], *id.*, at p. 267 (conc. opn. of Douglas, J.), *id.*, at pp. 267-268 [30 L.Ed.2d at pp. 436-437] (conc. and dis. opn. of Marshall, J.); *Correale* v. *United States* (1st Cir. 1973) 479 F.2d 944, 949; *Palermo* v. *Warden, Green Haven State Prison* (2d Cir. 1976) 545 F.2d 286, 296; *United States* ex rel. *Baker* v. *Finkbeiner* (7th Cir. 1977) 551 F.2d 180, 184.) As *Santobello* notes, the variations in plea bargain violations are such that no absolute rule can be formulated that will fit every case.[1] The constitutionally compelled remedy must be

---

[1]404 U.S. at pages 262-263 [30 L.Ed.2d at pages 433-434]. As was observed in *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 13 [136 Cal.Rptr. 409, 559 P.2d 1028]: "Specific

fashioned with a view to the circumstances of the individual case. Unfortunately, it is just such an individualized approach that is rejected by the majority in favor of the mechanical application of a rule distilled from a partial and superficial analysis of this court's prior cases.

It is true that a judge should not be forced to accept sentence limitations agreed to by the prosecutor and the defendant. (See *People v. Johnson, supra*, 10 Cal.3d 868, 873.) However, it is also true that this court has ordered enforcement of plea bargained limitations where it involved the length of a sentence. In *People v. Flores, supra*, 6 Cal.3d 305, the defendant entered a plea of guilty to a charge of robbery. There was also an allegation that the defendant was armed with a deadly weapon during the commission of the robbery. As part of his plea bargain, 14 other felony counts were dismissed. At that time, robbery was punishable by a term of imprisonment of five years to life. A finding that the defendant used a firearm in the commission of a robbery carried an additional five-year mandatory consecutive sentence. (*Id.*, at p. 309.) Nevertheless, when defendant entered his plea, he was advised that his maximum sentence would be only five years to life.

The court unanimously held in *Flores* that "where a defendant's guilty plea has been entered as part of such a [plea] bargain with recognized authorities, and judgment entered contrary to the terms of the bargain, he may move to have his plea set aside, or the judgment may be modified to conform with the terms of his bargain." (*Id.*, at pp. 308-309.) This court held that under the circumstances of that case, defendant "must be given the benefit of his plea bargain." (*Id.*, at p. 309.) The judgment was modified by striking the firearm-use finding so that the defendant received the five years to life sentence which was part of the bargain, rather than the option to withdraw his plea. (*Id.*, at p. 310.)

While neither the *Flores* nor *Johnson* decision discussed at length the rationale for providing enforcement of the bargain in the one case and

---

enforcement of a plea bargain agreement is actually a broad term covering several different types of relief. The remedy differs depending upon the nature of the breach and which party is seeking specific enforcement. When the breach is a refusal by the prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain. When the breach is a refusal by the court to sentence in accord with the agreed upon recommendation, specific enforcement would entail an order directing the judge to resentence the defendant in accord with the agreement."

As *Kaanehe* and this case illustrate, a defendant (or the People) may seek specific enforcement in one case and spurn it in another. It all depends on the circumstances.

plea withdrawal in the other, there is an important factual distinction between the two. As this court noted in *Johnson*, the defendant had gained his plea bargained sentence limitations through concealing his true name and his lengthy criminal record. (*People* v. *Johnson, supra,* 10 Cal.3d at p. 872.) The trial judge learned Johnson's true name and the extent of his prior criminal history between the entry of the plea and the sentencing hearing. The judge sentenced defendant to prison despite the earlier agreement to treat the offense (credit card forgery, Pen. Code, § 484f, subd. (2)) as a misdemeanor with probation and a suspended sentence. It was the "serious misrepresentations by the defendant" which "reinforce[d the court's] reluctance to create a right to specific performance of a plea bargain," and led the court to order that the remedy be limited to plea withdrawal. (*People* v. *Johnson, supra,* 10 Cal.3d at p. 873.)[2]

This court in *People* v. *Kaanehe, supra,* provided a rationale for the reluctance of the court to enforce a prosecutor-defendant plea bargain that limited the punishment the defendant could receive when the judge felt the limitation was not proper. (*Id.,* at p. 14.) The majority admit that the *Kaanehe* rationale, that a prosecutor and a defendant should not be able to take away the court's discretionary sentencing power, does not really apply to the present case. (Maj. opn., *ante,* at p. 672.) Here, the trial court limited its own discretion, did not reserve the right to revoke the agreement, required the defendant to perform his part of the bargain, and then changed its mind. Yet, after admitting that the general rationale for not enforcing the plea bargain does not apply to this case, the majority base their refusal to enforce the bargain by citing *Johnson, supra,* 10 Cal.3d 868. Such reliance on *Johnson* is misplaced. Johnson did not argue that due process and fundamental fairness required the remedy of enforcement. Even if he had, his own misrepresentations to the court to obtain the plea bargain undercut any equitable claim he might have had to the enforcement of his bargain.[3]

---

[2]It should be noted that this court's adjudication of the general issue of remedies for broken plea bargains in *Johnson, supra,* 10 Cal.3d 868, was hampered by the fact that the request for enforcement of the plea bargain was not briefed, merely "suggested" at oral argument. (*Id.,* at p. 873.) Nor was any case law or constitutional authority cited by Johnson for his suggestion.

[3]The rule to be drawn from a consideration of *all* this court's prior cases dealing with the issue of remedy, which are in accord with a majority of the federal circuits, is that the competing interests of the defendant and the state should be weighed in deciding the appropriate remedy for a broken plea bargain. Factors which have favored the prosecution's choice of remedy are (1) fraud by the defendant in obtaining the plea bargain (*People* v. *Johnson, supra,* 10 Cal.3d 868), (2) additional information that is

If the *Kaanehe* rule were applied to the facts of this case specific enforcement of a particular sentence would be granted because there are "very special circumstances." (*People v. Kaanehe, supra*, 19 Cal.3d at p. 13.) First, the bargain was an unusual one in that the defendant was required to surrender his liberty for a significant period of time and submit to state-level incarceration between his admission of the probation violation and his final sentencing. This was a change in the status quo. Prior to the plea bargain, the defendant had been at liberty on his own recognizance. Therefore, the defendant was required, as consideration for the court's commitment not to send him to prison, not only to make an admission, but also to pay with his own liberty before the court had to fulfill its part of the bargain. In reliance on the court's commitment, the defendant agreed to surrender his liberty. This element of detrimental reliance is not present in most plea bargains, which usually involve no change in custody status between the entry of plea and the actual sentencing. Thus, if a court decides at sentencing not to honor the terms of a typical plea bargain, defendant is not hurt if he is allowed to withdraw his plea for he can return to the status quo ante.[4] When a plea bargain involves a substantial and immediate performance of a term of the bargain that is detrimental to the defendant before the trial court's final approval, a mere vacation of the plea is inadequate to return the defendant to the status quo ante, the majority's bland assertions to the contrary notwithstanding. (See *United States* ex rel. *Ferris v. Finkbeiner* (7th Cir. 1977) 551 F.2d 185, 187.)

Finally, appellant has already served a longer period of imprisonment than was called for by the terms of the plea bargain. When defendant was sentenced to state prison, he had already earned 374 days of imprisonment credit. He had more than one year of credit toward the offense. A person cannot be sentenced to serve more than one year of

---

later developed (*ibid.*) and (3) changed circumstances occurring between entry of plea and the time of sentencing (see *People v. Delles* (1968) 69 Cal.2d 906 [73 Cal.Rptr. 389, 447 P.2d 629] [defendant arrested for new offense between bargain and sentencing]). Factors which have favored the defendant's choice of remedy have been the defendant's performance of his side of the plea bargain, especially if he has commenced to serve his term of imprisonment (*People v. Flores, supra*, 6 Cal.3d 305), and a wilful and deliberate breach of a plea bargain by a prosecutor (*People v. Kaanehe, supra*, 19 Cal.3d 1).

[4]But see *Broken Plea Bargains, supra*, 66 Cal.L.Rev. at pages 512-528, which argues that *Santobello v. New York, supra*, 404 U.S. 257, and its progeny have recognized a constitutional interest in the protection of a defendant's reasonable expectations generated by a plea bargain, with a concomitant preference for specific enforcement of plea bargains.

confinement as a condition of probation. (Pen. Code, § 19a; see *People v. Johnson* (1978) 82 Cal.App.3d 183 [147 Cal.Rptr. 55].) Thus, when the trial court promised that it would not give a state prison sentence for the probation violation, in effect the court promised the defendant that upon his return from the diagnostic study, no further imprisonment would be imposed.

The federal courts, which have considered the proper remedy in this situation, are unanimous. The rule is best articulated by the United States Court of Appeals in *Palermo v. Warden, Green Haven State Prison, supra*, 545 F.2d at page 297: "We cannot conclude that the district court erred in determining that specific performance was the proper remedy in this case. Palermo had already been incarcerated for the entire promised prison sentence and parole term. Remand for withdrawal of the guilty plea would indeed have been meaningless, as the court below found." (Accord, *Correale v. United States, supra*, 479 F.2d at p. 950; *United States* ex rel. *Baker v. Finkbeiner, supra*, 551 F.2d at p. 184.)

The defendant's detrimental reliance in submitting to a Penal Code section 1203.03 study and the fact that he has already served six months more time than called for by the agreement compel the conclusion that enforcement of the plea bargain is the only disposition of the case that is consistent with due process.

Many of the broken plea bargain cases have resulted from a prosecutor's breach, rather than a trial judge's. Many cases have emphasized the importance of the integrity of the executive branch's conduct in the administration of justice. "There is more at stake than just the liberty of this defendant. At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice . . . ." (*United States* v. *Carter* (4th Cir. 1972) (en banc) 454 F.2d 426, 428.) Integrity is an important quality in a judicial officer. Integrity in the administration of criminal justice is, of course, no less essential. The unconditional commitments of the trial judge in this case should be honored. The *Kaanehe* rationale for not enforcing the plea bargain is by the majority's own admission not present in this case. The majority opinion implies that because appellant violated his probation, this court is under no obligation to adequately remedy the trial judge's broken agreement about what punishment would result. Harm to an individual accused who relies upon a trial judge's word is given no weight because the promise was made to a probation violator.

With this reasoning, it is no surprise that the majority is satisfied with a remedy that other courts have found, in similar circumstances, to be "meaningless" and "hollow." (*Palermo* v. *Warden, Green Haven State Prison, supra*, 545 F.2d at p. 297; *Correale* v. *United States, supra*, 479 F.2d at p. 950.)

I would remand the case to the trial court with directions to vacate the state prison commitment and to sentence appellant in accord with the August 9, 1979, commitments of the trial judge.

Newman, J., and Woods, J.,* concurred.

Appellant's petition for a rehearing was denied August 19, 1981. Bird, C. J., and Broussard, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.