**George JOHNSON, Appellant,**

v.

**James MABRY, Commissioner, Arkansas Department of Revenue, Appellee.**

No. 81–2181.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1982.

Decided May 6, 1983.

Rehearing and Rehearing En Banc Denied June 30, 1983.

---

Richard Quiggle, Little Rock, Ark., for appellant.

Steve Clark, Atty. Gen. by Dennis R. Molock, Deputy Atty. Gen., Little Rock, Ark., for appellee.

Before LAY, Chief Judge, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

McMILLIAN, Circuit Judge.

George Johnson appeals from a final order entered in the District Court for the Eastern District of Arkansas dismissing his petition for writ of habeas corpus, 28 U.S.C. § 2254. For reversal petitioner argues that the district court erroneously refused (1) to grant specific performance of a proposed plea bargain and (2) to shift the burden of proof to the state to show that petitioner's ineffective assistance of counsel was not prejudicial. For the reasons discussed below, we reverse and remand.

Petitioner's case, like those of many other state habeas petitioners, has become procedurally complicated. For a statement of the facts underlying petitioner's criminal convictions, see *Johnson v. State*, 252 Ark. 1113, 482 S.W.2d 600 (1972). According to the evidence presented by the state, in May 1970 petitioner and Eddie Jackson broke into the house of W.A. Siscoe with the intent to commit burglary. Mr. and Mrs. Siscoe and their daughter Vicki arrived home in the middle of the burglary. Vicki was the first person to enter the house; she confronted the intruders and screamed. Mr. Siscoe heard Vicki's screams and entered the house. One of the intruders threatened to kill him and grabbed Vicki and used her to shield his escape from the house. At this point shots were exchanged by one of the intruders and Mr. Siscoe. Vicki was fatally wounded, and petitioner and Mr. Siscoe were wounded.

Petitioner was convicted of first degree murder for the death of Vicki Siscoe and sentenced to life imprisonment. Petitioner was subsequently convicted of burglary and assault with intent to kill on June 15, 1971; these charges arose out of the same incident. Petitioner was sentenced to 21 years imprisonment for the burglary and 12 years for the assault, to be served concurrently. On July 17, 1972, petitioner's murder conviction was reversed by the Arkansas Supreme Court for failure to give a requested jury instruction and remanded for a new trial. *Johnson v. State*, 482 S.W.2d at 606.

The state trial court appointed Harold Hall of the public defender's office to represent petitioner. The following facts about the plea bargaining negotiations are not disputed. On Friday, October 27, 1972, the prosecuting attorney contacted Hall and proposed a 21-year sentence, to be served *concurrently* with petitioner's burglary and assault sentences, in exchange for a guilty plea to the charge of accessory after a felony murder. Hall told petitioner the terms the next day, Saturday, October 28, 1972. Petitioner agreed to accept the plea proposal. The following Monday, October 30, 1972, Hall called the prosecuting attorney and accepted the plea bargain. However, the prosecuting attorney told Hall that a mistake had been made and withdrew the proposal. The prosecuting attorney then proposed a recommendation of a 21-year sentence to be served *consecutively* to petitioner's other sentences. Apparently Hall did not respond to this second proposal and assigned the case to another public defender, John Achor.

Petitioner proceeded to trial November 8, 1972. On November 9, 1972, the trial court declared a mistrial, evidently on the ground of prejudicial newspaper publicity, excused the jury and rescheduled the trial for December 7, 1972. The trial was later continued to February 26, 1973, when petitioner entered a guilty plea to the charge of accessory after a felony murder and was sentenced to 21 years imprisonment, to be served *consecutively* to the burglary and assault sentences.

Petitioner sought post-conviction relief in the state courts on the grounds of mistake and ineffective assistance of counsel. The state trial court denied relief and its decision was affirmed by the Arkansas Supreme Court in an unpublished opinion, *Johnson v. State,* No. CR–78–18 (Ark. June 5, 1978). Petitioner then filed the petition for writ of habeas corpus, alleging mistake, coercion and ineffective assistance of counsel. Petitioner argued that he did not understand the nature and consequences of the plea bargain and pled guilty only because his defense attorney threatened him with life imprisonment if he went to trial. Petitioner also argued that he received ineffective assistance of counsel because his defense attorney did not discuss the case with

him until ten minutes before trial, failed to interview witnesses and did not explain the nature and consequences of the plea bargain.

The district court referred the petition to a magistrate for an evidentiary hearing and report and recommendation. Petitioner, Hall and Achor testified at the first evidentiary hearing in August 1979. At this point petitioner raised an additional constitutional issue, alleging that the prosecuting attorney's withdrawal of the plea bargain proposal after petitioner's acceptance was unconstitutional. The magistrate held supplemental evidentiary hearings in October and December 1980, at which petitioner, Lacey Gordon [1] and Benny Kelley [2] testified.

■ The district court adopted the magistrate's report and recommendation, *Johnson v. Mabry,* No. PB–C–78–139 (E.D.Ark. Sept. 17, 1981), finding that petitioner's mistaken belief about the sentence he would receive if he pled guilty was not reasonably justified,[3] that petitioner's guilty plea was not induced by threats or misrepresentations by defense counsel,[4] and that petitioner was not prejudiced by ineffective assistance of counsel.[5] The court

1. Lacey Gordon is a friend of petitioner's and one of three persons petitioner claims were with him on the night of the burglary and shooting.

2. Benny Kelley is a friend of petitioner's and one of three persons petitioner claims were with him on the night of the burglary and shooting.

3. *See Griffith v. Wyrick,* 527 F.2d 109, 113 (8th Cir.1975); *United States ex rel. Curtis v. Zelker,* 466 F.2d 1092, 1098 (2d Cir.1972), *cert. denied,* 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973). Here, the record contains statements made by the state trial judge before acceptance of the guilty plea that petitioner "agreed to take twenty-one years on top of the twenty-one he's got [for the burglary and assault] which will make a total of forty-two years." The court also credited the testimony of Achor, who testified that he discussed the nature and consequences of the plea bargain with petitioner, specifically explained to petitioner that the proposed plea bargain sentence represented a total sentence of 42 years and even attempted to compare the possibility of

parole for a 42-year sentence with that of a life sentence.

4. The court concluded that petitioner's allegation of a mistaken belief about the sentence of the guilty plea (that petitioner voluntarily pled guilty but thought the sentence was for 21 years concurrent) was logically inconsistent with his allegation of coercion (that defense counsel threatened that petitioner would be convicted and sentenced to life if he went to trial). Slip op. at 6. We also note that defense attorney Achor testified that after reviewing the transcript of petitioner's first trial and the opinion of the Arkansas Supreme Court and interviewing Siscoe and several of the police witnesses, he believed that if petitioner went to trial, he would be convicted and would probably receive a life sentence and that he told this to petitioner.

5. The court found that petitioner's defense attorney failed to attempt to locate and interview Eddie Jackson, Lacey Gordon and Benny Kelley. *E.g., Ford v. Parratt,* 638 F.2d 1115, 1117 (8th Cir.) (failure to investigate rumor), *vacated on other grounds,* 454 U.S. 934, 102 S.Ct. 467,

also rejected petitioner's claim that the prosecuting attorney's withdrawal of the plea bargain proposal was unconstitutional.[6] Slip op. at 11–12, *citing Government of Virgin Islands v. Scotland,* 614 F.2d 360, 363–65 (3d Cir.1980) (*Scotland*). The district court dismissed the petition and this appeal followed. On appeal petitioner argues that (1) he has a constitutional right to enforcement of the plea bargain proposal and (2) because of the changed circumstances beyond petitioner's control, the court should have shifted the burden of proof to the state on the question of the absence of prejudice. Because we agree with petitioner's first argument, we do not reach the burden of proof question. *See* note 5 *supra.*

In 1971 the Supreme Court recognized that the "disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice," which, if "[p]roperly administered, . . . is to be encouraged." *Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); *see also Brady v. United States,* 397 U.S. 742, 751–52, 90 S.Ct. 1463, 1470–71, 25 L.Ed.2d 747 (1970) (discussing advantages of plea

bargained dispositions for criminal justice administration). The Court's approval of plea bargaining "presuppose[d] fairness in securing agreement between an accused and a prosecutor." *Santobello v. New York,* 404 U.S. at 261, 92 S.Ct. at 498. The Court held that "[t]his phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Id.* at 262, 92 S.Ct. at 499. The source of the fairness requirement is constitutional, presumably substantive due process, *see Cooper v. United States,* 594 F.2d 12, 15–16 (4th Cir.1979) (*Cooper*); *see also Santobello v. New York,* 404 U.S. at 266–67, 92 S.Ct. at 500–01 (Douglas, J., concurring) (specifically noting that *Santobello* is a state case over which the Supreme Court has no supervisory jurisdiction and recognizing a constitutional basis for the holding); Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Calif.L.Rev. 471, 474–75 n. 10, 476 n. 16 (1978) (hereinafter *Broken Plea Bargains*); Comment, *Specific Enforcement to Ensure Due Process in Plea Bargaining,* 21 Wm. & Mary L.Rev. 521 (1979),

70 L.Ed.2d 242 (1981); *Morrow v. Parratt,* 574 F.2d 411, 413 (8th Cir.1978) (failure to interview witnesses). Although Achor testified that petitioner never mentioned Gordon or Kelley, the court noted that petitioner testified at the first trial that he had been riding around in a car with Jackson, Gordon and Kelley that night and that Gordon and Kelley had dropped Jackson and petitioner off in front of the Siscoe house. Both Gordon and Kelley testified at the supplemental evidentiary hearings that they knew petitioner, were not involved with petitioner or Jackson on the night of the shooting and only heard about the incident "on the street." The record also indicates that Jackson, the individual who broke into the Siscoe house that night and who, according to petitioner, fired the gun, was in the state penitentiary at the time of petitioner's retrial and guilty plea. It appears, however, that Jackson was released on parole in 1977 and is currently wanted by state authorities for violating the conditions of his parole. Jackson has been unavailable as a witness.

The court concluded that defense counsel's failure to attempt to locate and to interview Gordon and Kelley did not prejudice petitioner's ability to make an intelligent and voluntary

plea. Slip op. at 9; *see Ford v. Parratt,* 638 F.2d at 1118; *United States v. Davis,* 616 F.2d 365, 366 (8th Cir.1980) (per curiam); *Nevels v. Parratt,* 596 F.2d 344, 346 (8th Cir.), *cert. denied,* 444 U.S. 859, 100 S.Ct. 122, 62 L.Ed.2d 79 (1979). Although the court agreed that the unavailability of Jackson was a changed circumstance beyond petitioner's control, the court refused to shift the burden of proof to the state to show the absence of prejudice in defense counsel's failure to attempt to locate and interview Jackson. Slip op. at 9, *citing McQueen v. Swenson,* 498 F.2d 207, 220 (8th Cir.1974). The court concluded that it was unreasonable to assume that Jackson's testimony would have differed from that of Gordon or Kelley, have been helpful to petitioner, or have influenced his decision to plead guilty.

**6.** As noted by the court below, petitioner did not raise this issue in the post-conviction proceedings in Arkansas state courts. However, the Arkansas courts will not entertain successive petitions for relief, at least not in noncapital cases. Therefore, the court concluded that petitioner had exhausted his available state remedies. Slip op. at 10. We agree.

and mandates that "the most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining." *Correale v. United States,* 479 F.2d 944, 947 (1st Cir.1973); *see United States v. Bowler,* 585 F.2d 851, 854 (7th Cir.1978) ("to protect the plea bargaining defendant from overreaching by the prosecutor and to insure the integrity of the plea bargaining process"); *Palermo v. Warden,* 545 F.2d 286, 296 (2d Cir.), *cert. denied,* 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1976); *Geisser v. United States,* 513 F.2d 862, 863 (5th Cir.1973), *cert. denied,* 450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981) (following several remands).

In general the legal analysis in plea bargaining cases has relied heavily upon contract law principles, in particular emphasizing contract formation (offer and acceptance), breach, estoppel (entry of guilty plea or detrimental reliance), and remedies (rescission or specific performance). *See, e.g., Scotland,* 614 F.2d at 364;[7] *Cooper,* 594 F.2d at 16 (citing cases from Fourth Circuit); *People v. Calloway,* 29 Cal.3d 666, 631 P.2d 30, 175 Cal.Rptr. 596 (1981) (bank); *People v. Kaanehe,* 19 Cal.3d 1, 559 P.2d 1028, 136 Cal.Rptr. 409 (1977); *Shields v. State,* 374 A.2d 816, 819 (Del.), *cert. denied,* 434 U.S. 893, 98 S.Ct. 271, 54 L.Ed.2d 180 (1977); *see generally Broken Plea Bargains,* 66 Calif.L.Rev. at 525. Other cases, however, have recognized that contract law is useful only as an analogy. *See United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.) (analogy to contract law is not determinative in plea negotiations), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *Cooper,* 594 F.2d at

16–20; *United States ex rel. Selikoff v. Commissioner of Correction,* 524 F.2d 650, 654 (2d Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976); *cf. Brewer v. Williams,* 430 U.S. 387, 401 n. 8, 97 S.Ct. 1232, 1241 n. 8, 51 L.Ed.2d 424 (1977) ("We do not deal here with notions of offer, acceptance, consideration, or other concepts of the law of contracts. We deal with constitutional law."); *Roe v. United States Attorney,* 618 F.2d 980, 981 (2d Cir.) (per curiam) (court of appeals will not use doctrine of actual authority in context of promises made by government officials), *cert. denied,* 449 U.S. 856, 101 S.Ct. 152, 66 L.Ed.2d 70 (1981); *United States v. Bowler,* 585 F.2d at 854 ("A plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language."). *See generally Broken Plea Bargains,* 66 Calif.L.Rev. at 527–28 (proposing theory of "constitutional contracts").

The analogy between contracts and plea agreements works well in the usual plea bargain case, which involves the entry of a guilty plea, or the performance of some other action, following plea negotiations and an agreement about specific terms. *E.g., United States v. Runck,* 601 F.2d 968, 970 (8th Cir.1979) (on petition for rehearing) (following entry of negotiated plea, dispute arose over whether part of sentence was within plea agreement accepted by district court). Traditional contract principles, however, are of little guidance in a plea proposal case like the present one. Here, as in *Cooper* and *Scotland,* we are confronted with a fact situation that falls short of a plea bargain.[8] Petitioner did not enter a

---

7. "The bargaining process has often been analogized to contract principles, and plea agreements are often likened to unilateral contracts—consideration is not given for the prosecutor's promise until the defendant actually enters his [or her] plea of guilty." *Government of Virgin Islands v. Scotland,* 614 F.2d 360, 364 (3d Cir.1980) (*Scotland*) (footnote omitted).

8. Here, the prosecuting attorney proposed the 21-year concurrent sentence on Friday; the defense attorney discussed the plea proposal with petitioner on Saturday and petitioner agreed to

accept the plea proposal that day. The defense attorney contacted the prosecuting attorney on Monday and accepted the plea proposal, but the prosecuting attorney then withdrew the plea proposal, explaining only that a mistake had been made. In *Cooper* the relevant events occurred on the same day: about 11 a.m. the prosecuting attorney and defense attorney discussed the terms of the plea proposal; the defense attorney immediately discussed the plea proposal with the defendant, who agreed to accept; about 12 p.m. the defense attorney attempted to contact the prosecuting attorney;

plea of guilty in court and has not performed any specific action in reliance upon the plea bargain. *Compare Palermo v. Warden,* 545 F.2d at 290 (defendants offered reduced sentences and early parole in exchange for return of stolen jewelry); *see United States v. Bowler,* 585 F.2d at 852 (plea agreement provided for dismissal of counts and recommended sentence if defendant cooperated in further prosecutions and other investigations). However, petitioner did rely on the plea proposal to the extent that he considered the terms offered, agreed to accept the plea proposal and communicated his willingness to plead guilty to the prosecuting attorney.

In *Cooper* the Fourth Circuit found "the constitutional right to 'fairness' [set forth in *Santobello*] to be wider in scope than that defined by the law of contract" and recognized "a constitutional right to enforcement of plea proposals [which] may arise before any technical 'contract' has been formed, and on the basis alone of expectations reasonably formed in reliance upon the honor of the government in making and abiding by its proposals." 594 F.2d at 16–18 (footnotes omitted). The *Cooper* court based

this constitutional right on substantive due process: it is simply unfair to permit the government in effect to go back on its word. *Id.* at 18–19; *cf. Broken Plea Bargains,* 66 Calif.L.Rev. at 513 (arguing that *Santobello* can be understood as extending constitutional protection to the personal expectations created in defendants by plea agreements with the state). The *Cooper* court also relied upon the sixth amendment right to effective assistance of counsel:

> Because prosecutors are required to conduct plea negotiations through defense counsel, the government's positions and communications in plea discussions are necessarily mediated through his [or her] counsel. . . . To the extent that the government attempts through defendant's counsel to change or retract positions earlier communicated, a defendant's confidence in his [or her] counsel's capability and professional responsibility, as well as the government's reliability, are necessarily jeopardized and the effectiveness of counsel's assistance easily compromised.

594 F.2d at 18–19 (footnote omitted). The holding in *Cooper* was very narrow:

about 1:30 p.m. the prosecuting attorney's superior reviewed the plea proposal and instructed the prosecuting attorney to withdraw the plea proposal; about 2:30 or 3 p.m. the prosecuting attorney withdrew the plea proposal before the defense attorney accepted. 594 F.2d at 15. In *Scotland* the time interval is greater, but the facts are essentially the same. 614 F.2d at 363. On November 11 the prosecuting attorney made its plea proposal; the terms were communicated to the defendant on November 29 and defendant agreed to accept them at that time; the prosecuting attorney, however, added a new condition to the plea proposal; the defendant moved for specific performance of the initial plea proposal. *Id.* at 361–62.

Present in each case are the following factors that the *Cooper* court considered crucial to the finding of a constitutional right and violation: [1] the proposal was specific and unambiguous in form, and [2] was made without any reservation related to a superior's approval or otherwise; [3] its content was reasonable in context; [4] it was made by a prosecutor with apparent (and probably actual) authority at the time; [5] it was communicated promptly to the defendant so that no question of staleness was involved; [6] the defendant assented promptly and unequivocally

to its terms, indicated . . . assent to [defense] counsel, and was entitled so far as the record shows to assume that its communication to the government would consummate the plea agreement; [7] defense counsel did in fact within a matter of a few hours [or within several days] communicate defendant's acceptance to the government, by sheer fortuity being told of the government's "withdrawal" before [defense counsel] could vocalize [defendant's] "acceptance"; and finally, [8] the reason for the attempted withdrawal had nothing to do with extenuating circumstances affecting the government's or any public interest that were unknown when the proposal was extended, but [apparently] lay simply in a superior's second-guessing of a subordinate's judgment.

594 F.2d at 19. *Cf. People v. Calloway,* 29 Cal.3d 666, 631 P.2d 30, 175 Cal.Rptr. 596, 603 n. 3 (1981) (bank) (Bird, C.J., dissenting) (factors which favor the prosecution's choice of remedy for broken plea bargains: fraud by the defendant, additional information developed later and changed circumstances); *People v. Johnson,* 10 Cal.3d 895, 519 P.2d 604, 112 Cal. Rptr. 556 (1974) (bank) (defendant concealed true name and past criminal record).

When . . . a proposal—specific, unambiguous and not unreasonable on its face—is offered by the government to a defendant through his [or her] counsel, constitutional fairness requires that it be fulfilled if within a reasonable time the defendant unequivocally [agrees to accept] it, and unless in the interval extenuating circumstances affecting the propriety of the proposal that were unknown to and not reasonably discoverable by the government when the proposal was made have supervened or become known.

*Id.* at 19; *see* note 8 *supra* (listing specific factual considerations relied upon by court). *Cf.* Comment, 21 Wm. & Mary L.Rev. at 536–39 (arguing procedural due process as preferable constitutional basis for *Cooper* holding).

The Third Circuit in *Scotland* rejected the Fourth Circuit's due process analysis on the grounds that it not only interfered with prosecutorial discretion [9] and discouraged pleas,[10] but, more importantly, was unnecessary because, in the absence of detrimental reliance, a jury trial is an adequate remedy.[11] 614 F.2d at 364–65. The Third Circuit also found no implication of the sixth amendment right to effective assistance of counsel in the government's withdrawal of the plea proposal.[12]

We believe that the *Cooper* analysis should be followed. This approach recognizes the limited usefulness of contract principles in the plea bargaining context. Plea bargaining involves more than commercial law. Because the entry of a guilty plea constitutes a waiver of fundamental constitutional rights, *Santobello v. New York,* 404 U.S. at 264, 92 S.Ct. at 500 (Douglas, J., concurring), plea bargains are not just contracts in which the prosecution exchanges the dismissal or reduction of charges and recommendations on sentencing for the defendant's guilty plea. Imposing upon the government the duty to conduct plea bargaining with scrupulous fairness, which, in the present case, would require the government to honor the terms of its plea proposal, is consistent with the "fairness" requirement set forth in *Santobello.* As noted in *Cooper,* "constitutional decisions cannot be made to turn in favor of the government on the fortuities of communications or on a refusal to accord any substantive value to reasonably induced expectations that government will honor its firmly advanced proposals." 594 F.2d at 17.

9. "[B]inding the prosecutor to his [or her] original plea [proposal] does interfere with his [or her] discretionary functions, *i.e.,* determining what he [or she] feels is fairest in light of the defendant's circumstances, the government's resources, and the statute involved." *Scotland,* 614 F.2d at 364 (footnote omitted).

10. [Prosecutors] will be reluctant to offer to bargain until they are very sure that they want to be bound by the offer. The fact that the government would have to be very careful about all the elements of the offer certainly is not detrimental. However, if the result of the [*Cooper*] rule is either a delay in bargaining or fewer plea proposals, there is also a consequent diminished savings of prosecutorial and judicial resources. Moreover, the advantages of quick disposition and quick punishment are also diminished. *Id.*

11. [The fundamental right to trial by jury] would be belittled if we held it to be an insufficient "remedy" or result for a defendant who has not been induced to rely on the plea to his detriment. The prosecutor is under no duty to plea bargain—if no offer is made, the defendant is entitled to a trial. There is no rational basis for holding, in essence, that a trial is sufficient for the defendant who has not been offered a plea and insufficient for the one who has. *Id.* at 365.

12. We note that in [all] plea negotiations, even when they do not involve the withdrawal of a plea proposal, there is a possibility that the defendant may lose faith in his [or her] attorney when, for example, the government fails to offer any plea proposal or offers only an unfavorable one. This factor, without more, is not enough to violate the defendant's sixth amendment right. The appropriate focus for determining whether the right to effective counsel has been violated is on defense counsel and his [or her] performance rather than on defendant's perception of defense counsel. *Id.* at 363 (footnotes omitted). Of course, the court in *Cooper* relied upon the sixth amendment right to effective assistance of counsel as another source of "the government's fundamental duty to negotiate with scrupulous fairness in seeking guilty pleas." 594 F.2d at 19.

We do not agree that the *Cooper* analysis improperly restricts prosecutorial discretion. The government does not have to initiate or participate in plea bargaining. *See Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). However, once the government does so, it must negotiate with "scrupulous fairness." *Cooper* does not restrict the particular terms that the government may propose during plea negotiations; the government may make conditional proposals and may withdraw or modify outstanding proposals that have not been accepted or rejected after a reasonable period of time. *Cooper* does, however, require the government to honor whatever terms it has proposed if they are promptly and unequivocally agreed to by the defendant. In practice, this means that government attorneys may have to become better organized and scrutinize plea proposals before discussing them with defense counsel. *See* 594 F.2d at 20. Further, requiring the government to conduct plea negotiations in a more orderly manner should not necessarily discourage guilty pleas. A more orderly method should reduce arbitrary action and promote greater consistency in the disposition of similar cases, thus encouraging defendants to enter pleas. *See* Comment, 21 Wm. & Mary L.Rev. at 536–38. Moreover, *Cooper* expressly contemplates that the government can withdraw a plea proposal or reopen plea negotiations, even after the plea proposal has been accepted by the defendant, if the government demonstrates that the plea proposal was based upon inaccurate or incomplete information, for example, if the defendant misrepresents or conceals relevant information or there is additional information that was not reasonably discoverable at the time the plea proposal was offered. 594 F.2d at 19.

Nor can we agree that a jury trial is an adequate remedy in cases like the present one. In terms of the contract law analogy, trial does not provide the defendant with the benefit of the bargain, that is, jury trial will not protect the defendant's reasonable expectations that the government will honor its proposals. Nor does the alternative of jury trial really address the conduct of the government. We are concerned here with what the Fourth Circuit in *United States v. Carter,* 454 F.2d 426, 428 (4th Cir.1972) (banc), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974) (following remand), characterized as "the honor of the government" and "public confidence in the fair administration of justice." Here, the government in effect promised to recommend a specific sentence if petitioner agreed to plead guilty to a specific charge. If we were to hold that jury trial is an adequate remedy in these circumstances, we would have no effective way to discourage the potential abuse of the plea bargaining process. We will not allow the government to take advantage of petitioner's acceptance of the plea proposal, in the absence of any change in the underlying circumstances, and to exploit petitioner's decision to plead guilty by further hard bargaining and by recommending a longer sentence. *Compare Bordenkircher v. Hayes,* 434 U.S. 357, 360–65, 98 S.Ct. 663, 666–69, 54 L.Ed.2d 604 (1978) (no violation of due process by prosecutor who carries out threat made during plea negotiations to have accused reindicted on more serious charges on which he is plainly subject to prosecution if he does not plead guilty to offense with which he was originally charged).

In sum, we stress that our holding, like that in *Cooper,* is very narrow and dependent upon the specific facts. *See* note 8 *supra.* The appropriate remedy is a difficult problem in plea bargain cases. *E.g., Santobello v. New York,* 404 U.S. at 263, 92 S.Ct. at 499 (specific performance or withdrawal of plea); *id.* at 266–67, 92 S.Ct. at 501 (Douglas, J., concurring); *Correale v. United States,* 479 F.2d at 949–50; *see also Broken Plea Bargains,* 66 Calif.L.Rev. at 474–76. Here, petitioner seeks enforcement of the plea proposal. Accordingly, we reverse the dismissal of the petition for habeas corpus and remand the case to the district court with directions to grant the writ of habeas corpus unless the state resentences petitioner in accordance with the concurrent sentence plea proposal within 120 days of the filing of this opinion.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. I believe the better view is that detrimental reliance is necessary to enforce an offer for a plea bargain. *Government of Virgin Islands v. Scotland,* 614 F.2d 360 (3d Cir.1980). My view and that in *Scotland* is not based upon contract principles. As stated in *Scotland,* detrimental reliance implicates due process guarantees. 614 F.2d at 365. The court in *Scotland* discussed *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and reasoned that *Santobello* recognized a basic estoppel principle. In *Santobello* the guilty plea had been entered on June 16, 1969, in reliance on an offer that the prosecuting attorney would not recommend a sentence. It was only when the defendant appeared before a different judge for sentencing on January 9, 1970, that he learned that the agreement had been broken. *Santobello* thus dealt with a situation in which there had been detrimental reliance.

I believe that the majority has adopted a chameleon approach to reliance. The majority first states that petitioner "has not performed any specific action in reliance upon the plea bargain." Maj. op. at 327–328. It continues "[h]owever, petitioner did rely on the plea proposal to the extent that he considered the terms offered, agreed to accept the plea proposal and communicated his willingness to plead guilty to the prosecuting attorney." Maj. op. at 328.

It is abundantly clear that the majority has found no detrimental reliance in this case, and its holding requires no detrimental reliance. The majority specifically adopts the reasoning in *Cooper v. United States,* 594 F.2d 12 (4th Cir.1979), as opposed to the approach in *Scotland. Scotland* requires a showing of detrimental reliance to enforce a plea offer, but *Cooper* makes no such requirement. Accordingly, the extended discussion adopting *Cooper* is unnecessary unless the majority really is finding that there was no detrimental reliance in this case. If there was detrimental reliance, both *Scotland* and *Cooper* would support enforcement of the plea offer.

The magistrate in his report and the district court in its order adopting the report concluded that no detrimental reliance was present. Immediately after a lengthy quotation from *Scotland* underscoring the distinction that *Cooper* would allow specific performance of a plea offer where there was no detrimental reliance, the magistrate stated that the case was factually similar to *Cooper.* The petition for habeas corpus as originally filed makes no reference to detrimental reliance, nor does the motion to amend filed by petitioner's counsel. Petitioner's counsel, in his objections to the proposed findings and conclusions details a finding of detrimental reliance based upon counsel's lack of preparedness to go to trial November 8, 1972. This argument does not bear upon the issue before us, however, as the November 8 trial resulted in a mistrial and petitioner's guilty plea was not entered until February 26, 1973.

*Cooper* enumerated several limitations on its holding. Among the qualifications stated in *Cooper* is that the plea offer be reasonable in context. Johnson had originally been convicted of first degree murder and sentenced to life imprisonment. The conviction on this charge was set aside and the guilty plea now before us was later entered to the lesser charge of "accessory after a felony murder." Johnson's conviction of burglary carried a twenty-one year sentence and his assault with intent to kill conviction carried a twelve year concurrent sentence. I question whether we can conclude it is reasonable for the prosecutor to offer a concurrent twenty-one year sentence on the murder charge, or accessory after a felony murder charge, which would result in defendant's receiving the same sentence for murder, burglary and assault that he had received for burglary and assault alone. There is no explanation in the record as to the nature of the mistake that was the reason for the withdrawal of the plea offer. We can only speculate that the prosecutor may have intended to offer a

consecutive twenty-one year sentence but mistakenly said "concurrent". That there was a mistake in making the offer in this case, however, is further distinction from the limited circumstances in *Cooper,* which involved the overruling of a subordinate by a superior in the United States Attorney's office.

*Cooper* stressed the significance of this distinguishing circumstance in the following statement:

> This necessarily means that once presented, such a proposal may not be withdrawn in the face of proffered acceptance for no other reason than that a superior disagrees with an apparently authorized subordinate's judgment in making it.

*Cooper v. United States,* 594 F.2d at 19.

While *Cooper* is careful to make plain the factual limitations on the scope of its holding and the majority here seems to do so, the net result in this case is simply to expand the *Cooper* rule to an unacceptable extreme.

The majority also holds that a jury trial is an inadequate remedy where a plea bargain offer is withdrawn.[1] I find more persuasive the reasoning in *Scotland* that the great constitutional right to trial by jury is an adequate remedy. While it is true, as the majority states, that a jury trial will not give the defendant the benefit of his bargain with the government, he is not entitled to any particular sentence within the range provided in the statute for the crime with which he is charged. When the government mistakenly makes an offer and then withdraws it, defendant is not being deprived of a specific sentence to which he has a constitutional right.

The majority and *Cooper* make much of fairness. In *Cooper,* however, the withdrawal of the plea offer based on the superior's overruling of the subordinate is a distinct kind of unfairness to the defendant. But here a mistake by the prosecutor involves the interest not only of the defend-

ant, but of the public as well, and has fairness implications of a far different nature. A mistake should be given different treatment from what was at best the insistence on an organizational, if not bureaucratic, prerogative.

For the foregoing reasons, I would affirm.

---

1. Interestingly the majority opinion reverts to the contract law analogy in discussing this question.