**Anthony CORREALE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 73–1009.**

United States Court of Appeals, First Circuit.

Argued April 9, 1973.

Decided June 6, 1973.

---

Richard Cotton, Manchester, N. H., by appointment of the Court, for appellant.

Roger L. Gauthier, Asst. U. S. Atty., with whom William B. Cullimore, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This appeal from a denial of a motion to vacate sentence under 28 U.S.C. § 2255 requires examination of prosecutorial obligations in plea bargaining.

Appellant, incarcerated on October 15, 1970 in state prison under a 4-to-8 year state sentence, was indicted in December 1970 in the District of New Hampshire as an accomplice to a bank robbery. After discussions between appellant's counsel and the United States Attorney, and, of course, conversations between counsel and appellant, he changed his plea to guilty on July 23, 1971, at which time the government made a sentence recommendation which was the inducement for the plea and the subject of the present controversy. After extensive exchanges, including those required by Fed.R.Crim.P. 11, the plea was accepted and, at the government's request, sentencing postponed until after the trial of his co-defendants. On December 10, 1971, after a repetition of the government's position and statements by appellant and his counsel, a sentence of 5 years was imposed by the court under 18 U.S.C. § 4208(a)(2), making the appellant eligible for parole at such time as the Board of Parole may determine.

Promptly after his release, on March 15, 1972, by the state authorities and his transfer to a federal institution, appellant filed the instant motion seeking to withdraw his plea or have his sentence vacated because of the government's alleged breach of what he understood to be the promise. After appointment of counsel, a full hearing was held, as required by United States v. McCarthy, 433 F.2d 591 (1st Cir. 1970). At the hearing, appellant waived his claim for withdrawal of his plea and pressed only his request that the remainder of his sentence be suspended. The government, while opposing that request, did not oppose vacation and resentencing. After finding that neither his counsel nor the United States Attorney misled the appellant and that the latter fulfilled his sentence recommendation promise, the court held that even under the petitioner's own version of the facts, he would not be entitled to relief under 28 U.S.C. § 2255. This appeal followed.

All sides agree that, at a minimum, the United States Attorney promised to make a recommendation that the court impose a sentence that would be effectively concurrent with the state sentence that he was then serving, meaning primarily that he would be eligible for federal parole at the time that he was paroled by the state authorities. Though the appellant claimed that he understood the agreement to be a guarantee that he would in fact be paroled under his federal sentence when paroled by the state, the district court found, based on credible testimony by both the United States Attorney and appellant's counsel at disposition, that the agreement was only the more common and realistic one of a recommendation to that effect.

Appellant's fundamental complaint, however, was not directly dealt with in the district court's opinion, although fully aired at the hearing. It is that the United States Attorney recommended a federal sentence of 4-to-8 years, which, whether designed to effectuate a general promise of an effectively concurrent recommendation or to fulfill what appellant's counsel testified was a more specific undertaking, was an illegal federal sentence, and in any case, one which in fact would not have been effectively concurrent with the one then being served. If the agreement simply was to recommend an effectively concurrent sentence, the 4-to-8 year recommendation clearly failed to implement it. If, on the other hand, the 4-to-8 year recommendation was specifically promised, the defect is equally fatal, it being im-

possible of fulfillment. Under the circumstances, therefore, there is no point in remanding for further findings as to the relationship of the specific recommendation to the basic plea agreement. We must reverse, not because of any lack of good faith, but only because the ·most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining.

■ Plea bargaining is a fundamental part of our criminal justice system as presently structured. It produces prompt adjudication of many criminal prosecutions, thus reducing the period of pre-trial detention for those unable to make bail and permitting more extensive consideration of the appropriate disposition. These benefits flow, however, from the defendant's waiver of almost all the constitutional rights we deem fundamental. There must accordingly be safeguards to insure that the waiver is knowledgeable, Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and voluntary, Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). Though a legitimate prosecution promise does not render a guilty plea legally involuntary, Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), its fulfillment is a necessary predicate to a conclusion of voluntariness when a plea "rests in any significant degree" on it. Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).[1]

■ It does not suffice, however, simply to make any promise and fulfill it. The Supreme Court has recognized as much in defining the standard of voluntariness for guilty pleas:

"A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by . . . misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g., bribes)." *Brady, supra,* 397 U.S. at 755, 90 S.Ct. at 1472.

Nor are the obligations to avoid misrepresentations or improper promises limited to good faith efforts. Prosecutorial duties affecting the fairness of trials have never been so restricted. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed.2d 104 (1972). The same is true of the government's role in plea bargaining. In Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), a majority of the Court agreed that the guilty plea there would be void if "a member of the prosecution, gave her, however honestly, clearly erroneous legal advice." *Id.* at 728, 68 S.Ct. at 325.[2] In *Santobello,* the Court reaffirmed that view: "That the breach of agreement was inadvertent does not lessen its impact." 404 U.S. at 262, 92 S.Ct. at 499. Prosecutorial misrepresentations, though made in good faith, even to obtain a just, and here a mutually desired end, are not acceptable. Ignorance of the law is no excuse for the government, just as it avails not the defendant. Nor are contradictory or confusing statements of the law adequate. While we do not go so far as to say that minor and harmless slips by prosecutors will void a plea bargain, we hold that, at a minimum, a prosecutor may not, in exchange for a guilty plea, promise and/or make a recommendation of an illegal sentence.[3]

---

1. There is no question here, as there was in *McCarthy, supra,* that the promise was the inducement for the plea.

2. Although four members of the Court thought that the plea there should have been voided on the existing record, two other members insisted that a finding on the quoted issue was first necessary.

3. The situation before us could be analyzed under various branches of the *Brady* test. Though the promise to recommend an illegal sentence is not itself unfulfillable, the recommended sentence is. In any case, it is a misrepresentation to the defendant who rightfully assumes that the government's attorney will only recom-

■ Here, the United States Attorney, though conscientious and well-intending, did not meet his obligations, whichever view is taken of the exact scope of the plea agreement. The recommendation had three fatal defects. First, a 4-to-8 year sentence is an impermissible federal sentence. 18 U.S.C. § 4208(a) explicitly provides:

> "Upon entering a judgment of conviction, *the court . . . may* (1) *designate* in the sentence of imprisonment imposed a *minimum term* at the expiration of which the prisoner shall become eligible for parole, *which* term may be less than, but *shall not be more than one-third of the maximum sentence imposed.*" [Emphasis added.]

The recommended sentence, even if specifically promised, was therefore plainly contrary to law. Second, a sentence setting almost any minimum would have prevented concurrent federal parole eligibility since, as defense counsel informed the court at the disposition in December 1971, appellant's case would be considered by the state parole board by February 1972 at the latest. Third, the recommended sentence would not have been concurrent, even in the technical sense, the appellant having already served some 14 months of his state 4-to-8 year sentence by the time of federal sentencing. To make the federal sentence even facially concurrent, 14 months should have been subtracted from the outer recommended limits.

The United States Attorney apparently recognized this final problem at the last moment. At the disposition hearing he stated that: "I think the effect of any sentence to Mr. Correale which was in excess of three years would be to have no chance of a concurrent sentence." At the § 2255 motion hearing, he explained that he had meant that were the federal sentence to be truly concurrent, the federal minimum could not have been more than the roughly three years remaining to be served under the state minimum. He made no effort at sentencing, however, to give this explanation of his cryptic comment or to explain the inconsistency between that comment and his basic 4-to-8 year recommendation. In any event, even this belated observation was completely unresponsive to the almost immediate possibility of state parole, which defense counsel had just mentioned. Nor was the situation cleared up when, after the court's announcement that it would impose a 5-year sentence with immediate parole eligibility, the United States Attorney stated that "we would go one step further and recommend that he be released on parole as soon as it is determined by State authorities that he is eligible for parole under his State sentence." This statement was obviously not adequate fulfillment of a promise to recommend concurrency, having come only after the court's response to his recommendation. Even had it come earlier, we think it so inconsistent with his earlier recommendation that only an express statement that he was changing his recommendation would have sufficed to dispel any confusion and meet his obligation of fulfilling his plea-inducing promise.[4] Though these comments at sentencing suggest the prosecutor's bona fides in seeking to effectuate the plea agreement, good faith or deferential terseness do not excuse the mistakes. A government attorney must know the applicable

---

mend the possible. Similarly, though sentence recommendations are generally a proper part of the prosecutor's business, a proposal for an illegal sentence is not. Finally, the defect here could be thought to be the defendant's lack of full awareness of "the actual value of [the] commitments made to him by the . . . prosecutor." We need not, however, decide under which element this case is properly considered, since under any view, this type of prosecutorial error is barred by *Brady.*

4. Despite the apparent contradictions, the district court stated repeatedly at the § 2255 hearing that it understood the United States Attorney's recommendation to have been for a 4-to-8 year sentence.

law and its implications for the case before him, and must present a recommendation to both the defendant and court which is lawful, clear and consistent both internally and with respect to the underlying promise. Those requirements were obviously not met here.

■ We do not mean to imply that only the government attorney has obligations of knowledge and clarity. Defense counsel too must know or learn about the relevant law and evaluate its application to his or her client. Clearly, in certain cases, such failure will amount to constitutionally ineffective assistance of counsel and undermine the validity of the plea. *See* Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Here the trial counsel testified that he did not know about this most fundamental statutory provision relating to sentencing. Particularly when a plea bargain is discussed, and hence sentencing becomes the client's preeminent concern, it is incumbent on counsel to acquaint himself or herself with all the available alternatives and their consequences for the defendant's liberty and .rehabilitation. Counsel's ignorance here is inexcusable, although perhaps understandable in light of his reliance on the government attorney's presumed knowledge of the available options. However, in this circumstance, his failure is not the legally relevant concern.

We note that the court indicated at the disposition hearing its awareness of the relevant sentencing options. Not only did it suggest and ultimately employ the (a)(2) alternative, but it also stated at one point that "Of course, he is eligible for parole after he has served one-third of [the] time." It would have been better, and would have obviated the later unfortunate train of events, if the court had gone further and stated (1) that it rejected the recommendation because of its patent illegality; (2)· that the court could not accept the plea in light of the misunderstanding which obviously existed; (3) that defendant had the absolute right to withdraw his plea, or alternatively either to plead with the understanding that there would be no recommendation whatever before the court, or to consult further with the prosecutor in an effort to arrive at a new, mutually agreeable and legal recommendation; (4) that defendant and his counsel, before proceeding further, could take a reasonable time to consider the situation anew, with or without the prosecutor as they chose, after which defendant should inform the court as to the course of action he wished to take.

■ We must lastly observe, because of the government's argument here, that a prosecutorial failure to fulfill a promise or to make a proper promise is not rendered harmless because of judicial refusal to follow the recommendation or judicial awareness of the impropriety. In *Santobello, supra,* the trial judge had explicitly stated that "It doesn't make a particle of difference what the District Attorney says he will do, or what he doesn't do." 404 U.S. at 259, 92 S.Ct. at 497, and the Supreme Court saw "no reason to doubt that", *id.* at 262, 92 S. Ct. 495. It nevertheless concluded that the defendant was entitled to relief. The reason is obvious; it is the defendant's rights which are being violated when the plea agreement is broken or meaningless. It is his waiver which must be voluntary and knowing. He offers that waiver not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court. If they are not adequate, the waiver is ineffective.

We reach then the question of remedy. The right is to have the promise fulfilled. In *Santobello,* the Court listed the remedies as either "specific performance of the agreement" or "the opportunity to withdraw his plea", 404 U. S. at 263, 92 S.Ct. at 499. Appellant now seeks only the former. Although the Court stated that specific performance in *Santobello* meant that "petitioner should be resentenced before a different judge", *id.,* to whom the promised

recommendation would presumably be made, the petitioner before the Court had been released on bail pending both the state appeals and Supreme Court disposition, *id.* at 260, 92 S.Ct. 495, and thus had not yet commenced to serve his sentence. The Court therefore had no reason to consider other possible means of providing specific enforcement. It ruled, however, that the appropriate relief would be left to the discretion of the state court and stated that "what is reasonably due in the circumstances . . . will vary." *Id.* at 262, 92 S.Ct. at 499. In United States v. Carter, 454 F.2d 426 (4th Cir. 1972) (*en banc*), for example, the court held that if the promise which induced the appellant's plea to a stolen checks charge in the District of Columbia was, as he alleged, that he would not be prosecuted elsewhere for anything having to do with the checks, then his subsequent ten-count indictment in the Eastern District of Virginia for forgery and conspiracy should be dismissed. *See also* Johnson v. Beto, 466 F.2d 478 (5th Cir. 1972).

■■ Here it seems to us hollow to remand for resentencing before another judge who will hear a recommendation that the federal sentence, including parole eligibility, be effectively concurrent with the state sentence which has already been served and as to which parole has already been granted some 14 months earlier. Even under the government's calculation, which appellant challenges,[5] he has already served some 17 months of his original federal sentence, the last 14 after release by state authorities. Given the rather unusual nature of the agreed-upon recommendation, the length of time already served, and more importantly, the length of time already served which is contrary to the recommendation, we believe that the only just remedy and the only one which could now approximate specific enforcement of the agreement is a resentencing to the same term, execution of sentence to be suspended and the appellant placed on probation (courts, of course, being unable to mandate parole) for a period of three years, to reflect the nearly two years since change of plea when the improper recommendation was made and from which time the sentencing judge had intended the sentence to run. Accordingly, we vacate the sentence and remand for immediate resentencing,[6] the sentence to be 5 years, execution of sentence suspended, and probation for 3 years.

Reversed and remanded for resentencing pursuant to this opinion. Mandate shall issue forthwith.

---

5. Although appellant entered his plea on July 23, 1971 and the district court recommended that his service of sentence be deemed to commence on that date, the Bureau of Prisons calculated the sentence from December 10, 1971, the date of sentencing. Appellant argues this is improper because it was the government which moved for the delay in sentencing. He also complains of the failure to credit him, under 18 U.S.C. § 3568, with the time he spent in state maximum security prison, rather than in the minimum security forestry camp to which he would have been sent in January 1971 were it not for the federal indictment. We need not consider either claim relating to the calculation of his original sentence in light of our disposition. For purposes of this discussion only, we have employed the government's calculation.

6. Under these unusual circumstances, the rule of Mawson v. United States, 463 F.2d 29 (1st Cir. 1972), requiring resentencing by a different judge, does not apply.