Michael J. **KINGSLEY**, Petitioner, Appellant,

v.

**UNITED STATES of America,** Respondent, Appellee.

No. 91–2053.

United States Court of Appeals, First Circuit.

Heard May 5, 1992.

Decided July 6, 1992.

James L. O'Neill, Providence, R.I., for petitioner.

Kevin O'Regan, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for the U.S.

Before SELYA, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge.

In 1987, pursuant to a plea agreement with the government, appellant Michael Kingsley pled guilty to a number of of-

fenses involving narcotics distribution and tax evasion. Four years later, Kingsley brought the present action under 28 U.S.C. § 2255, alleging that the government had violated two provisions of the plea agreement and seeking to withdraw his guilty plea. The district court found a breach of the first provision, but refused the remedy of vacating Kingsley's guilty plea. The district court found no breach of the second provision. We affirm in part and remand for further proceedings.

## I.

On July 28, 1986, Kingsley was indicted on twenty-two federal narcotics and tax charges. The indictment alleged that from 1977 through 1985, Kingsley had directed a large scale marijuana and cocaine distribution enterprise. The indictment further alleged that during the years 1981–83, Kingsley had committed various tax offenses, including concealing his income from tax authorities and filing false tax returns.

After lengthy negotiations with the government, Kingsley pled guilty on January 9, 1987. His girlfriend, Kimberly Reynolds (who is not a party to this appeal), also pled guilty to a narcotics offense. At the plea hearing, Assistant United States Attorney Henry L. Rigali orally informed the court that the plea agreement contained the following terms:

1. the government would recommend a sentence of ten years in prison;

2. the government would not seek forfeiture of Kingsley's home or its contents, including a $4,000 stamp collection and a $9,500 diamond ring;

3. the government would not prosecute Kingsley's father or sister for any false statements made to the Internal Revenue Service and a grand jury, respectively;

4. the government would not call Kingsley or Reynolds as witnesses in its case against any remaining co-defendants;

5. the government would not prosecute Reynolds for any other federal offenses she may have committed in connection with her involvement with Kingsley's drug operation;

6. the government would "not object to Kingsley's request that he be allowed to ... serve his imprisonment in a camp facility";

7. the government would allow Kingsley to apply any of his forfeited assets to offset his civil tax liability;

8. the government "intend[ed] to proceed against" approximately $80,000 in debts owed to Kingsley by various associates, applying any funds collected to Kingsley's tax liability.

The last three provisions are at issue in this appeal. Of these, the final two require further explanation. At the time of the plea, the government had in its possession approximately $160,000 of Kingsley's assets, which, it claimed, were forfeitable as proceeds from drug trafficking. In addition, Kingsley had loaned approximately $80,000 to various associates, which funds the government claimed were also forfeitable. It was understood that Kingsley would forfeit the $160,000 in assets and his interest in the loan balances. In return, the government would allow Kingsley to apply the $160,000 in assets, and whatever of the loan funds it was able to recover, to his civil tax liability.

The district court conditionally accepted Kingsley's guilty plea and stated that it would defer consideration of the "actual plea bargains" until it had read the presentence reports. In addition, the court made clear that it had very little control over the facility to which Kingsley would be sent.

Rigali then prepared a letter for Kingsley's counsel outlining the forfeiture provisions of the plea agreement. At a disposition hearing on February 17, 1987, Kingsley's counsel objected to "one clause [in the letter] that makes it look[] as if the government may have no obligation to [collect the unpaid debts] and to use [the funds] to satisfy [Kingsley's] tax liability." Kingsley's counsel pointed out that Kingsley had forfeited to the government his interest in the loan balances but, under the letter, had not received any promise that the government would attempt to collect.

Rigali responded that:

The government will pursue these debts. The government will take all reasonable steps it can in pursuing the debts. On the other hand, if at some point it appears that the debts are uncollectible and that it is imprudent and unreasonable to pursue them, the government retains the discretion not to do so.... [In the event the government decides not to collect] Mr. Kingsley [is] not going to be given a credit for the outstanding debt in reducing his civil tax liability.

The court then expressed its understanding that "the government will make every effort to collect," but Kingsley's counsel continued to protest, arguing that Kingsley should be given a right to attempt to collect himself if the government's efforts failed. At this point, the district court stated that it was unwilling to get involved in the plea negotiations, and that if the parties could not agree the case should go to trial. At the request of Kingsley's counsel, court was then recessed in order to continue negotiations.

That afternoon court was resumed, and Kingsley's counsel informed the court that all parties had signed a letter agreement concerning forfeiture. The letter provided that:

> As regards the unpaid balance of [the loans] ... the government retains complete discretion in the collection process. This includes making the practical determination to forgo collection.
>
> If the government abandons its efforts to collect the debts ..., defendant shall have the right to use whatever legal process that he may have available to him to collect said debts himself, at his own expense, but any amounts so collected shall be applied to reduce defendant's outstanding liability to the Internal Revenue Service.

The court then sentenced Kingsley to ten years in prison, having made clear that it would not recommend a camp facility.

In April 1987, Rigali wrote to the Bureau of Prisons that, because of the seriousness of Kingsley's offense and the possibility of confrontation with others also serving prison time, it would be "highly inappropriate" for Kingsley to serve his sentence in a camp facility. In June 1987, the government stated in a motion opposing Kingsley's motion to reduce his sentence that it "[took] great exception to the fact that the Bureau of Prisons has designated Kingsley to serve time in a camp ... facility." The government's motion was signed by Assistant United States Attorney Mary Elizabeth Carmody "for" Rigali, and a copy was sent by Rigali to the Bureau of Prisons. Shortly thereafter, Kingsley was moved from a prison camp to the Federal Correctional Facility at Otisville, New York.

Almost four years later, on March 4, 1991, Kingsley filed a pro se motion pursuant to 28 U.S.C. § 2255 in the District Court for the District of Massachusetts.[1] Asserting that the government had breached the plea agreement by 1) opposing Kingsley's attempts to serve his sentence in a camp facility and 2) "by not making any serious attempt to collect the debts," the motion asked the court to vacate the judgment and allow Kingsley to withdraw his guilty plea.

The motion was referred to the same judge who had presided over the entry of Kingsley's guilty plea. The court found the government to have breached its promise not to oppose placement in a camp facility, but denied Kingsley's request to withdraw his guilty plea as a remedy. Instead, the court ordered the government to write to the Bureau of Prisons indicating that it did not oppose Kingsley's designation to a camp facility. With regard to the debt collection promise, the court held that "the fact that the government exercised its discretion and did not collect the funds ... is not a breach of the agreement...." We affirm the district court's remedy for breach of the first promise but remand for

---

1. 28 U.S.C. § 2255 provides that a prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence."

further proceedings as to the second promise.

## II.

### A. *Facility Designation*

Kingsley argues that the district court's remedy for the government's breach of its promise not to oppose camp designation is inadequate. Rather than order specific performance of the agreement in the future, he says, the court should either have allowed him to withdraw his guilty plea or reduced his sentence.

 The government does not dispute that a breach occurred. Indeed, it seems clear that Rigali, shortly after making an explicit promise to Kingsley *not* to object, reneged on the promise on at least two occasions. While the government's repudiation of its pledged word is shocking, we believe that the remedy imposed was reasonable.[2]

The government's breach of a plea agreement is ordinarily remedied either by specific performance of the agreement or by allowing the defendant to vacate his guilty plea. *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *United States v. Canada*, 960 F.2d 263, 271 (1st Cir.1992). The choice between these two remedies is not up to the defendant; rather, it rests with the court. *Canada*, 960 F.2d at 271; *United States v. Kurkculer*, 918 F.2d 295, 299 (1st Cir. 1990).

In choosing a remedy, a court must exercise its "sound discretion ... under the circumstances of each case." *United States v. Garcia*, 698 F.2d 31, 37 (1st Cir. 1983); *see also Kurkculer*, 918 F.2d at 299 ("'what is reasonably due in the circumstances ... will vary'") (quoting *Santobello*, 404 U.S. at 262, 92 S.Ct. at 499). Specific performance, the less extreme remedy, is preferred. *Kurkculer*, 918 F.2d at 298 and 300.

In the present case, we note first that the government's non-opposition to Kingsley's camp designation was merely one part of a comprehensive plea agreement that included a number of other, more significant, provisions. Since it is not suggested the government reneged on most of these, the district court could reasonably have believed it would be extreme to rescind the entire agreement.

Second, the district court found that Kingsley was aware of the government's breach as early as 1987 and that his four year delay in filing his § 2255 petition had seriously hampered the government's ability to bring him to trial. This factor alone weighs heavily against allowing a withdrawal of the guilty plea. *Cf. United States v. Allard*, 926 F.2d 1237, 1243 (1st Cir.1991) (where defendant sought to withdraw guilty plea on grounds other than breach of plea agreement, one factor to be considered was whether government had been prejudiced by delay between entry of plea and motion to withdraw).

 Therefore, as between vacating the guilty plea and specific performance, we cannot say the district court abused its discretion in rejecting the former. Kingsley asks, in the alternative, that we consider a third option: resentencing him to time served as of the date of his parole eligibility. Kingsley claims that specific performance at this time will not adequately remedy the government's breach of the plea agreement. Because the government has already opposed Kingsley's designation to a camp facility, he says, a reversal of position at this late date will not be taken seriously by the Bureau of Prisons. Although we are sympathetic to Kingsley's concern, we do not think this problem warrants a reduction in his sentence.

We have held that "[w]here withdrawal of the plea or specific performance would be meaningless or infeasible, a court may

---

2. In addition to violating this provision of the plea agreement, the government has also violated the plea agreement by failing to award Kingsley the interest that should have been earned on certain forfeited assets. *See United States v. Kingsley*, 851 F.2d 16 (1st Cir.1988).

Moreover, a divided panel of this court, without deciding the question, has expressed doubts as to the constitutionality of the government's initial seizure of Kingsley's assets. *See In re Application of Kingsley*, 802 F.2d 571 (1st Cir.1986).

order imposition of a specific sentence." *Garcia*, 698 F.2d at 37. However, we have resorted to this remedy only in extreme situations where specific performance would be completely meaningless. For example, in *Correale v. U.S.*, the government breached its promise to recommend a sentence to run concurrently with defendant's state sentence. But by the time we decided the case, defendant had been released by state authorities. Holding that it would be "hollow" specifically to enforce the government's promise to recommend a sentence concurrent with a sentence already served, we ordered that the defendant be resentenced, and that execution of the sentence be suspended. 479 F.2d 944, 950 (1st Cir.1973). Likewise, in *Garcia*, the government breached its promise to inform the court of defendant's cooperation at sentencing, and possibly to recommend probation or a fine. By the time we decided the case, however, defendant had already served her sentence, so we ordered that defendant be resentenced to time served. 698 F.2d at 35–37. *See also Kurkculer*, 918 F.2d at 302 (same result as *Garcia*).

In this case, specific performance would not be "meaningless." Kingsley still has almost five years to serve on his ten year sentence,[3] and, if he can present good reasons for transfer to another facility, the government's non-opposition will be of some value to him.[4] Unlike *Correale, Garcia* and *Kurkculer*, this is not a case where it would be impossible for the decision maker to comply with the government's belated recommendation. To be sure, the government's non-opposition at this point may arguably be less effective than it would have been when it was bargained for, and the government had not taken any position on Kingsley's designation. But for the reasons stated, we cannot say that the court

abused its discretion in ordering specific performance rather than another remedy.

## B. *Debt Collection*

Kingsley next contends that the government breached the plea agreement by failing to attempt to collect the debts. Conceding that the government had the right to forgo collection completely, Kingsley contends that the government nevertheless had an obligation to make a good faith attempt to collect. Thus, Kingsley asks this court, at a minimum, to remand for the district court to determine what efforts, if any, the government made at collection. We agree with this disposition.

Contrary to the government's assertion, this court reviews de novo the question whether the government has breached a plea agreement with a defendant. *United States v. Atwood*, 963 F.2d 476, 478–79 (1st Cir.1992); *Canada*, 960 F.2d at 269. And in determining the government's obligations under a plea agreement, we must hold the government to "the most meticulous standards of both promise and performance." *Correale*, 479 F.2d at 947.

The district court's opinion relies entirely on the language of the letter signed by Kingsley and his attorney during a break in the February 17, 1987 hearing. This document provides that "the government retains complete discretion in the collection process.... [which] includes making the practical determination to forgo collection." Thus, the district court concluded that "[t]he fact that the government exercised its discretion and did not collect the funds owed to [Kingsley] is not a breach of the agreement...."

However, the district court's opinion ignores the statements made by Rigali before the break, repeatedly promising that the

---

**3.** Kingsley's brief states that he will be eligible for parole "soon" which apparently means sometime in 1992, the fifth year of his incarceration. As noted, however, the district court has found that Kingsley was aware of the government's breach in 1987; thus, he must bear some of the responsibility for the delay. And, of course, it is by no means certain he will be paroled for the remainder of his sentence.

**4.** 18 U.S.C. § 4082(b) authorizes the attorney general to transfer a prisoner from one facility to another at any time. Although this statute has been repealed, it remains in effect as to offenses committed before November 1, 1987. *See* Pub.L. No. 98–473, § 235, 99 Stat. 1728 (1985).

government would make reasonable attempts to collect the money. Rigali stated before the break that "it is the government's intention to *take all reasonable steps to collect all outstanding debts,*" but that "[i]f the government on the other hand in pursuing a debt reaches a dead end, it must have its discretion reasonably imposed that would allow it to forgo further collection...." (Emphasis added). Rigali then elaborated on the government's "discretion," stating that "if at some point it appears that the debts are uncollectible and that it is imprudent and unreasonable to pursue them, the government retains the discretion not to do so." The court then summarized its understanding of the agreement as follows:

> the government *will make every effort to collect the obligations of Mr. Kingsley....* If collected, that money will be used to decrease the amount of [his] civil liability to the IRS. If they can't collect it, obviously there is nothing to decrease it to. (Emphasis added).

Even though Rigali's oral representations were not expressly incorporated into the letter agreement, we think they were implicit and we read the agreement in that light. *See United States v. Garcia,* 956 F.2d 41, 43–44 (4th Cir.1992) (because the "contract" issues involved in a plea agreement implicate the defendant's constitutional rights as well as concern for the " 'fair administration of justice,' " parol evidence rule is not rigidly applied in construing plea agreements) (quoting *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986)).

We can find no indication that, in the negotiations during the break, the government ever withdrew its very emphatic assurances that it intended to take all reasonable steps to collect. While the ensuing written agreement refers to the government's "complete discretion" to "forgo collection," we think this language merely states the government's right, acting in good faith, to determine when further collection efforts would, as Rigali said, be "imprudent and unreasonable." This language did not obviate the implicit understanding that the government would "take all reasonable steps" to collect the debts. Indeed, Rigali's assurances to this effect appear to have played a major role in inducing Kingsley to sign the letter agreement. The only new element introduced by the letter agreement—one insisted on by Kingsley's counsel and the issue that led to the drafting of the letter agreement—was an express promise that if the government's collection efforts failed, Kingsley could attempt to collect himself. That promise did not affect the government's earlier promises to make reasonable attempts to collect.

We hold, therefore, that the government's obligations under the plea agreement required it to "take all reasonable steps" to collect Kingsley's debts, although it was granted wide authority to determine when, in good faith, such efforts were fruitless and to stop them at that time. The district court's narrower construction of the agreement was, we believe, in error. Because nothing in the record indicates what efforts the government made at collection, we remand the case for a determination whether the government complied with this obligation. It may well be that Kingsley was not prejudiced even if the government did breach the agreement, as the government had no obligation to collect if collection proved infeasible. Kingsley argues, however, that the government's failure to act promptly prejudiced his own efforts to collect, and, if the government did in fact breach the agreement, he should be given an opportunity to try to substantiate this assertion. The determination of whether any breach was harmless and, if not, the appropriate remedy therefor, is left up to the district court.

The district court's judgment of September 26 is affirmed in part and vacated in part, and the case is remanded for further proceedings consistent with this opinion.

*So ordered. No costs.*