96 F.3d 1451
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David Wayne SCONCE, Plaintiff-Appellant,
v.
Gil GARCETTI, District Attorney; Harvey Giss, District
Attorney, Defendants-Appellees.
David Wayne SCONCE, Petitioner-Appellant,
v.
Sam LEWIS, Director, Arizona Department of Corrections;
Attorney General of the State of California,
Respondents-Appellants.
 Nos. 96-55209, 96-56095.*
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 8, 1996.
Decided Aug. 29, 1996.
 
 ORDER
 Plaintiff's motion to consolidate appeals is GRANTED.
 Before: REINHARDT, HALL, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Petitioner, David Wayne Sconce, an Arizona state prisoner who is currently in custody in California awaiting trial, appeals the denial of his petitions for a writ of habeas corpus and his request for a preliminary injunction. Sconce alleges that the state of California has violated his fourteenth amendment right to due process by not fulfilling the terms of a plea agreement he made with the trial court, pursuant to which he served an agreed-upon sentence. Notwithstanding the fact that the trial court lacked authority to make the plea agreement, we conclude that Sconce has been deprived of his constitutional rights by the state's belated refusal to comply with the terms of the plea agreement, and that, having served his sentence, he is entitled to specific enforcement of that agreement. Accordingly, we reverse and remand for the issuance of a writ.
 
 BACKGROUND
 
 3
 On August 30, 1989, Sconce pled guilty to 21 counts in the Lamb Funeral Home case, which involved charges of mishandling of human remains. He entered the plea pursuant to an agreement offered by California Superior Court Judge Terry Smerling. According to the plea agreement, if Sconce pled guilty to the 21 counts, he would receive a five-year sentence; and, should the state obtain a reversal of the conspiracy to commit murder charge Judge Smerling had dismissed earlier, he could then plead guilty to that charge as well, receive probation, and be required to serve no additional prison time. It was further agreed that the arrangement would apply to a number of other funeral home counts on appeal at that time.[1] Pursuant to the plea agreement, Sconce was sentenced to five years in California state prison.
 
 
 4
 During the proceedings, the state objected to the plea bargain. It argued that the sentence was not long enough. At no time, however, did the state object to the jurisdiction of the judge to make the plea bargain as to the counts on appeal, or challenge any part of the plea bargain agreement itself as invalid. Moreover, the state never appealed the plea agreement and never sought a writ of prohibition or mandate.[2] Instead, it proceeded to incarcerate Sconce in accordance with the agreement. Only after Sconce had completed serving his prison sentence did the state move to vacate the plea bargain.
 
 
 5
 The California Court of Appeal reversed the dismissal of the conspiracy count on March 18, 1991. The court ruled that because Sconce's withdrawal from the conspiracy occurred after he had committed an overt act, the withdrawal did not absolve him of liability. On June 5, 1991, the California Supreme Court denied review of the ruling, and on June 21, 1991, the conspiracy count was remanded to the Superior Court. On August 8, 1991, the state filed a motion to recuse Judge Smerling. The motion was granted.
 
 
 6
 On October 1, 1991, after Sconce had been released from state prison in the normal course, the state requested that the plea bargain be set aside, contending for the first time that the judge had lacked jurisdiction to offer a plea bargain with respect to the conspiracy charge because it was on appeal at the time the plea bargain was offered and accepted. Sconce brought a motion to enforce the plea bargain.
 
 
 7
 On December 24, 1991, Superior Court Judge Paul Boland invalidated the plea agreement. The case had been assigned to him following Judge Smerling's recusal. Judge Boland found that "Judge Smerling was without authority to take any action" with respect to the conspiracy charge and, as a result, "any of Judge Smerling's actions, including contingent offers, made during the pendency of the appeal are not subject to enforcement." Judge Boland concluded, moreover, that even if Judge Smerling had jurisdiction to make the contingent offer, the plea agreement was invalid because the charge was not an appropriate one for plea bargaining under California Penal Code § 1192.7.
 
 
 8
 On January 9, 1992, Sconce challenged the constitutionality of the rescission of the plea agreement. The California Court of Appeal denied Sconce's petition for a writ of mandate. It ruled that his remedy, if he so chose, was to "withdraw from the plea bargain in its entirety and to enter a new plea." On January 27, 1992, Sconce sought review in the California Supreme Court. The Court denied review on March 11, 1992, with one justice voting to hear the case. Sconce filed a petition for writ of certiorari in the United States Supreme Court on June 3, 1992, which was denied on October 5, 1992.
 
 
 9
 On February 8, 1994, the state filed a motion to consolidate a remaining funeral home count with the conspiracy charge. The motion was granted. The state subsequently sought Sconce's transfer from Arizona, where he was serving a five-year sentence on unrelated charges. On approximately October 4, 1995, Sconce was transferred to the custody of the Sheriff of Los Angeles County pending trial.
 
 
 10
 On February 7, 1996, Sconce filed a civil rights complaint seeking an order restraining the state from prosecuting him on the conspiracy charge. On February 14, 1996, Judge John Davies ruled on the merits by "construing this civil rights case as a habeas corpus petition."[3] Judge Davies distinguished Santobello v. New York, 404 U.S. 257 (1971), on the ground that "it contemplate[d] plea bargains between the defendant and the prosecutor only." In addition, Judge Davies found that the plea was based on "unlawful and therefore unfulfillable promises." Judge Davies concluded that the trial court lacked jurisdiction to enter into a plea bargain concerning the conspiracy charge because the matter was on appeal at the time, and that it also lacked authority to enter into the plea bargain because California Penal Code § 1192.7 precluded bargaining regarding such a charge.
 
 
 11
 On February 20, 1996, in a proceeding relating to the conspiracy charge, Sconce's counsel, relying on the plea bargain, offered a conditional plea in state court. Counsel stated, "[F]or the record, [Mr. Sconce] does again offer to plead to the murder conspiracy case, and if the court will accept it and agree to give probation to Mr. Sconce, he will make that offer." The trial court rejected the offer, stating "I have seen Judge Smerling's scars. I am not willing to get into that same box."
 
 DISCUSSION
 
 12
 The basic question we must answer in this case is whether a defendant who is induced to plead guilty on the basis of a promise made by the trial court judge and who has served his sentence in accordance with the plea agreement is entitled under the Due Process Clause to specific performance of that agreement, notwithstanding the fact that the judge was without authority to enter into it. In the case before us, the state sought to invalidate the plea bargain only after the defendant had served the agreed-upon sentence. We hold that under these unique circumstances a defendant is entitled to specific enforcement of the plea agreement.
 
 
 13
 In Santobello v. New York, 404 U.S. 257 (1971), the Supreme Court concluded that a defendant has a constitutional right to relief when the state breaches a plea agreement, even when the breach is inadvertent. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262. The Court held that a defendant is entitled either to withdrawal of a guilty plea or specific performance of the plea bargain, but remanded to the state court for a determination as to which form of relief was required under the circumstances of the case. Id. at 263.
 
 
 14
 Here, we conclude that Sconce is entitled to specific enforcement of the plea bargain. There can be no question that the promise by the state court that he would be allowed to plead guilty to the conspiracy charge and receive probation was part of the inducement or consideration for Sconce's plea of guilty.[4] Sconce waived, or bargained away, many of the rights we as a people deem fundamental when he pled guilty.[5] Having done so on the basis of the trial court's promise, to require Sconce to plead guilty without the benefit of the plea bargain or to undergo a trial on the conspiracy charge in violation of the plea bargain would violate his right to due process. See Santobello, 404 U.S. at 268 ("When a prosecutor breaks the bargain, he undercuts the basis of the waiver of constitutional rights implicit in the plea) (Marshall, J., concurring); Correale v. United States, 479 F.2d 944, 947 (1st Cir.1973) ("Though a legitimate prosecution promise does not render a guilty plea legally involuntary, its fulfillment is a necessary predicate to a conclusion of voluntariness when a plea 'rests in any significant degree' on it.") (quoting Santobello, 404 U.S. at 262). Due respect for the rights Sconce has waived, as well as the integrity of plea bargains, requires that the promise that induced the plea be fulfilled, particularly because Sconce has already fulfilled his part of the bargain. See Bercheny v. Johnson, 633 F.2d 473, 476 (6th Cir.1980) ("Simply stated, the law does not permit a criminal defendant to bargain away his constitutional rights without receiving in return ... the benefit of his bargain...."); United States v. Hallam, 472 F.2d 168, 169 (9th Cir.1973) ("It is clear from Santobello v. New York that due respect for the integrity of plea bargains demands that once a defendant has carried out his part of the bargain the Government must fulfill its part."). As the Supreme Court has reiterated, " '[W]hen a plea rests in any significant degree on a promise or agreement ... so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " Mabry v. Johnson, 467 U.S. 504, 509 (1984) (quoting Santobello, 404 U.S. at 262).
 
 
 15
 Three arguments, however, can be made for why we should not apply the principles established in Santobello in such a straightforward manner: 1) the state should not be bound by the plea agreement because the trial judge, rather than the prosecutor, made the promise that induced the guilty plea; 2) the state should not be bound because the trial judge lacked the authority to enter into the plea agreement; and 3) a remand to the state court to select the appropriate remedy is the proper procedure to follow on state habeas review. We address these contentions in turn.
 
 
 16
 That the promise that induced the plea came from the judge, and not the prosecutor, is not a valid basis for distinguishing Santobello and the line of cases following it. In fact, the same result is required, a fortiori. The interests that dictate strict compliance by the state with the terms of a plea agreement--interests such as fundamental fairness, public confidence in the integrity of the judicial system, and the honor of government officials[6]--are implicated even more strongly when it is the judge who makes the promise than when it is the prosecutor. It is the judiciary, after all, which is at the core of our system of justice and which is ultimately responsible for the fair administration of justice. If anything, then, a defendant has more reason to rely on the promise of the court than on the promise of a prosecutor.[7]
 
 
 17
 That the trial court lacked the authority to make the promise regarding the conspiracy charge--that the promise was invalid--does not alter our conclusion.[8] What is critical here is the fact that Sconce reasonably relied on the promise to his detriment, not that the promise was unauthorized. "The reason is obvious; it is the defendant's rights which are being violated when the plea agreement is ... meaningless." Correale, 479 F.2d at 949. Because the promise was part of the inducement or consideration for the plea, it must be fulfilled, notwithstanding the fact that it was in excess of the trial court's authority. See Palermo v. Warden, Green Haven State Prison, 545 F.2d 286, 296 (2d Cir.1976), cert. dismissed, 431 U.S. 911 (1977) (holding that "where a defendant pleads guilty because he reasonably relies on promises by the prosecutors which are in fact unfulfillable, [in this case because they were ultra vires,] he has a right to have those promises fulfilled"); United States ex rel. Ferris v. Finkbeiner, 551 F.2d 185, 186-87 (7th Cir.1977), cert. denied, 435 U.S. 932 (1978) (holding that fundamental fairness required limiting sentence to the agreed-upon term even though it resulted in an illegal sentence under state law); Correale, 479 F.2d at 947-50 (concluding that the only just remedy was enforcement of promise by prosecutor even though it resulted in an illegal sentence). The integrity of plea bargaining and the administration of justice would certainly be damaged if a defendant, standing before a judge in an official proceeding, could not reasonably rely on what the judge says or does, for fear that the judge might be acting without jurisdiction or in excess of legal authority.
 
 
 18
 We are not suggesting that when a duly-appointed judicial officer, acting in his judicial capacity, exceeds his authority and offers an invalid plea agreement, the state is without a remedy simply because the defendant accepted the agreement. The state certainly has various remedies at its disposal: it may file a motion for reconsideration and point out to the trial judge the errors he has made; it may seek a writ of prohibition or a writ of mandate from the Court of Appeal; it may appeal directly if direct appeal is authorized under state law; or it may otherwise seek to invalidate the plea agreement. Here, however, the state failed to avail itself of any of these remedies, starting with its failure at the time of the plea hearing to object to the plea agreement on the ground of lack of authority or jurisdiction. The state's failure to raise any legal objection at that hearing, to request reconsideration, or to immediately appeal or seek a writ of mandate or prohibition is inexcusable. The grounds for invalidating the plea were available to the state from the time the plea was taken, but it chose not to act. Instead, the state allowed Sconce to rely on the agreement to his substantial detriment. It convicted and incarcerated him pursuant to the plea agreement, and administered his sentence pursuant to it. Only after the state had received the full benefit of the agreement did it seek to repudiate it and to prosecute Sconce on the conspiracy charge. The state's failure to challenge the plea before Sconce had fulfilled his part of the bargain is a determinative factor in our analysis.
 
 
 19
 Finally, although courts on habeas review often remand to a state court for a determination of the appropriate relief, Pierre v. Thompson, 666 F.2d 424, 427 (1982), Santobello "did not hold that remand was appropriate in every case, or as a general course," Carter v. McCarthy, 806 F.2d 1373, 1377 (9th Cir.1986), cert. denied by McCarthy v. Carter, 484 U.S. 870 (1987). Federal courts remand to the state court to let it decide the appropriate remedy when withdrawal of the plea and specific performance of the agreement are both viable forms of relief. However, when specific performance is the only appropriate remedy, because the defendant has served all or a significant portion of his sentence, federal courts order that the broken plea agreement be enforced. See Carter, 806 F.2d at 1377; Ferris, 551 F.2d at 186; Palermo, 545 F.2d at 297.[9]
 
 
 20
 In Carter, for example, where the defendant had already served a sentence in excess of the one he had bargained for and leave to withdraw his plea would have been of no benefit to him, we ordered specific performance of the broken plea agreement because "[w]e s[aw] no reason to remand a habeas case where there is no choice to be made and but one possible order to be issued." Carter, 806 F.2d at 1377. Similarly, in Ferris, the Seventh Circuit ordered specific performance where a state defendant had "substantially begun performing his side of the bargain," 551 F.2d at 186, and in Palermo, the Second Circuit affirmed the district court's grant of specific performance where withdrawal of the plea "would indeed have been meaningless" to a state defendant who would already have been released if the plea agreement had been fulfilled, 545 F.2d at 297.
 
 
 21
 Here, as in Carter, we see no reason to remand. Like the defendants in Carter, Ferris, and Palermo, Sconce has been prejudiced by the state's failure to abide by the terms of the plea agreement because he has already served his sentence pursuant to the agreement. Leave to withdraw the plea would therefore be of no benefit to him. As there is but one appropriate remedy to be ordered here, we do not remand to the state court to make an illusory choice.[10] Instead, in line with our precedent, we order that a writ issue directing the state to comply with the plea agreement or dismiss the conspiracy charge. In short, we conclude that, having accepted all the benefits of the bargain, the state must comply with the plea agreement if it wishes to pursue that charge.
 
 CONCLUSION
 
 22
 For the reasons stated, we REVERSE the district court's denial of Sconce's petitions for habeas relief and REMAND to the district court for issuance of a writ enforcing the plea agreement.
 
 
 23
 REVERSE and REMAND for issuance of a writ in accordance with this disposition.
 
 
 
 *
 In an order filed along with this disposition, we grant the motion to consolidate the appeal pending in Case No. 96-56095 with the appeal in Case No. 96-55209
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The following portion of the colloquy makes clear the terms of the offer
 The Court: My offer to you, Mr. Sconce, is that in the event any counts in this case you're later convicted on you receive no more time than the five years I just sentenced you to initially.
 That does include the conspiracy to murder count that I dismissed. After that count, the way the law is set up, giving this a rather drastic option to giving you 25 to life or probation.
 It's my view that 25 to life is an extremely excessive sentence for the behavior that underlies that count. I'd be compelled by conscience to give you probation.
 Actually the sentencing in between would be more appropriate but that's not the law.
 ....
 The Court: Mr. Sconce, do you understand the terms of the offer I'm making to you?
 [Sconce]: Yes, Sir.
 The Court: All right. By the way, I'll be explicit about this.
 As to counts you're not pleading to today, if you subsequently plead to them--if you plead to them after they are reinstated on People's appeal--if you plead to them in that time, I will give you no additional time beyond five years I'm going to sentence you to.
 That's only if you plead to them.
 Do you understand that sir?
 [Sconce]: Yes, Sir.
 (Emphasis added).
 
 
 [2]
 When asked at oral argument whether the state had attempted to prevent Sconce from being incarcerated pursuant to the plea agreement or appealed to the Court of Appeal because the trial court had exceeded its authority in entering into it, counsel for the state responded, "No, your Honor, that didn't happen."
 
 
 [3]
 Sconce had initially filed pro se habeas petitions alleging violations of due process and double jeopardy as a result of the rescission of the plea bargain. Because the magistrate to whom the habeas petitions were referred did not rule on them, and the state trial in the conspiracy case appeared imminent, Sconce filed the § 1983 complaint and sought a preliminary injunction. Judge Davies concluded that Sconce had exhausted his state remedies for the alleged due process violation and treated the request for injunctive relief as an application for habeas corpus relief. (The state does not contest Judge Davies' conclusion that Sconce exhausted his state remedies.)
 "In cases where a prisoner's section 1983 complaint evinced a clear intention to state a habeas claim, we have said that the district court should treat the complaint as a habeas petition." Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir.1995). Here, Sconce's § 1983 complaint evidences a clear intent to state a habeas claim. Sconce contends that he should not be tried on the conspiracy charge because it would violate his due process rights. As Sconce stated in his section 1983 complaint, he raised this same claim "in his habeas corpus petitions now pending." Accordingly, the district court properly treated his civil rights complaint as a habeas petition.
 On July 12, 1996, Judge Davies denied the previously ignored habeas petitions, ruling just as he did in the § 1983 case. On August 2, 1996, Sconce moved to consolidate the appeal from the order denying his habeas petitions with the appeal involving the § 1983 complaint, and the state did not object. We have granted the motion.
 
 
 [4]
 In construing a plea agreement, this court looks to "what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty." United States v. De La Fuente, 8 F.3d 1333, 1337 (9th Cir.1993). Here, the state trial court judge could not have the made the terms of the plea agreement any clearer. See supra n. 1. There is no issue as to what Sconce reasonably understood the terms of the plea agreement to be when he pled guilty
 
 
 [5]
 "[A] guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial, Duncan v. Louisiana, 391 U.S. 145, to confront one's accusers, Pointer v. Texas, 380 U.S. 400, to present witnesses in one's defense, Washington v. Texas, 388 U.S. 14, to remain silent, Malloy v. Hogan, 378 U.S. 1, and to be convicted by proof beyond a reasonable doubt, In re Winship, 397 U.S. 358." Santobello, 404 U.S. at 264 (Douglas, J., concurring)
 
 
 [6]
 See Palermo v. Warden, Green Haven State Prison, 545 F.2d 286, 296 (2d Cir.1976), cert. dismissed, 431 U.S. 911 (1977) ("[F]undamental fairness and public confidence in government officials require that prosecutors be held to 'meticulous standards of both promise and performance.' ") (citation omitted); United States v. Carter, 454 F.2d 426, 428 (4th Cir.1972), cert. denied, 417 U.S. 933 (1974) ("At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice in the federal scheme of government.")
 
 
 [7]
 In Carter v. McCarthy, 806 F.2d 1373 (9th Cir.1986), cert. denied by McCarthy v. Carter, 484 U.S. 870 (1987), a state prisoner sought habeas relief, contending that his plea was not voluntary and knowing because the trial court had failed to inform him of a mandatory parole term. We found that under the circumstances, acceptance of the plea was a constitutional violation. Carter, 806 F.2d at 1376. For reasons we explain more fully below, we ordered specific performance of the plea agreement--that is, we ordered Carter's release "from any further service under the parole term." Id. at 1377. See United States ex rel. Ferris v. Finkbeiner, 551 F.2d 185, 186-87 (7th Cir.1977), cert. denied, 435 U.S. 932 (1978) (holding that fundamental fairness required limiting sentence to the agreed-upon term where the trial judge mistakenly informed state prisoner that there would be no mandatory parole term)
 
 
 [8]
 We agree with the state that Judge Smerling lacked jurisdiction over the conspiracy charge at the time of the plea bargain because that charge was then on appeal. We agree also that Judge Smerling lacked the authority under California law to plea bargain regarding the conspiracy to commit murder charge because the crime is a felony punishable with imprisonment for life, see Cal.Pen.Code § 1192.7(a) & (c)(7) (prohibiting plea bargaining in felonies punishable with life imprisonment), or to enter into a plea agreement over the state's objection, see State v. Orin, 13 C.3d 937, 533 P.2d 193 (Cal.1975). However, as we explain more fully below, given these grounds for challenging the validity of the plea agreement, which were unquestionably obvious to the state at the time the plea was entered, we do not understand how the state could justify having waited to challenge the agreement until after Sconce had served his sentence
 
 
 [9]
 See also Bercheny, 633 F.2d at 476-77 (ordering specific performance where failure to conduct psychiatric evaluation resulted in state's failure to fulfill its part of the bargain); Harris v. Superintendent, Va. State Penitentiary, 518 F.2d 1173, 1174 (4th Cir.1975) (enforcing plea agreement where defendant had pled guilty and begun serving his sentence)
 
 
 [10]
 The state has already offered Sconce the option of withdrawing his plea, overlooking the violation that would result from depriving him of the benefit for which he bargained when he agreed to waive his constitutional rights, plead guilty, and serve the agreed-upon prison term